[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 414 
Aubrey Clyde Patterson filed suit against Clarke County Motors ("Clarke") on October 31, 1985, for benefits under the workmen's compensation laws of Alabama. Patterson alleged that he had an accident at work on November 9, 1984, which loosened a previously implanted hip prosthesis to the extent that it had to be replaced. He claimed permanent total disability as a result of that injury. A bench trial was held on September 23, 1987. On July 8, 1988, the trial court entered a final judgment in Patterson's favor which awarded temporary total disability benefits to him for five-sevenths of one week, ordered Clarke to pay his medical expenses, and awarded his attorney a lump sum fee of 15 percent of the benefits granted. Patterson filed a motion for new trial, which was denied. He then filed a notice of appeal with this court, to which Clarke responded with a cross-appeal.
Patterson is approximately 30 years old. He graduated from high school, completed a two-year course at a vocational school in mechanics, and then worked as a laborer for a paper company. In July 1981, he suffered a fracture of his right hip in an automobile accident. In August 1982, he underwent a partial hip replacement as a result of complications from that fracture. He subsequently walked with a limp, but the record reflected that otherwise he had no difficulty with his artificial hip and had only occasional pain. He was restricted from doing heavy manual labor, running, and excessive walking. Patterson was hired by Clarke in late 1983 to wash cars and do light mechanical work.
The accident upon which this suit is based occurred after Patterson and a fellow employee had finished washing a pickup truck. Patterson climbed into the back of the truck to dry the top of the cab. He testified that, when he climbed back over the tailgate, he caught his right leg on the truck and jerked it as he got off the truck. Other testimony indicated that he may have only swung his leg over the tailgate and stepped down onto the ground. The record clearly evidences, however, that immediately after Patterson alighted from the truck, he experienced severe pain in his right hip and leg. When the pain did not subside, his employer had someone drive him to the hospital. X-rays revealed loosening of his artificial hip.
During the surgical procedure to replace Patterson's prosthesis, his right femur was fractured, which prolonged both his hospital stay and his recuperative period. He was discharged from the hospital on November 28, 1984. He was paid his regular salary through November 23, 1984, after which he was paid no further benefits. Patterson was on crutches until at least June 18, 1985, when he last saw his doctor. The progress notes from that date stated that Patterson was doing well and could start physical therapy. He did not keep any further doctor's appointments, however, nor did he undergo any physical therapy. He has not worked since the accident, as he claims that any work he tries to do aggravates his leg.
Patterson argues on appeal that certain testimony of his vocational expert was wrongfully excluded, that the amount of temporary total disability benefits awarded was inadequate, and that the trial court erred in not awarding permanent total disability *Page 415 
benefits. Clarke contends on cross-appeal that Patterson has not established the legal and medical causation necessary to entitle him to workmen's compensation benefits. The company argues that any disability he suffers is the result of a preexisting condition.
We will first address the issues raised by Clarke.
Workmen's compensation cases come before this court on certiorari, and, therefore, our standard of review is very narrow and does not allow us to weigh the evidence. Cook v.Munn, 528 So.2d 881 (Ala.Civ.App. 1988). Our review of the judgment before us is limited to ascertaining whether any legal evidence or reasonable inference therefrom supports the trial court's findings of fact and whether the correct law was applied to such facts. Martin Industries, Inc. v. Dement,435 So.2d 85 (Ala.Civ.App. 1983). If conflicting testimony is presented, the findings of the trial court will be conclusive if there is any testimony to support them. DeHart v. IdealBasic Industries, Inc., 527 So.2d 136 (Ala.Civ.App. 1988).
Clarke is correct in asserting that an employee must meet two tests of causation — legal and medical — to establish his entitlement to workmen's compensation benefits. Gold Kist, Inc.v. Pope, 539 So.2d 291 (Ala.Civ.App. 1988). To establish legal causation, the employee must show that he was exposed to a risk or hazard to which he would not have been exposed had he not been performing his job. Gold Kist, Inc. v. Pope, supra. We find that Patterson's getting out of the pickup truck he had been washing was sufficient exposure to a hazard incident to the performance of his job to establish legal causation. SeeGold Kist, Inc. v. Jones, 537 So.2d 39 (Ala.Civ.App. 1988). To establish medical causation, the employee must show that the hazard or risk to which he was exposed was, in fact, a contributing cause of his injury. Fordham v. Southern PhenixTextiles, Inc., 387 So.2d 204 (Ala.Civ.App.), cert.denied, 387 So.2d 206 (Ala. 1980). We point out that the Supreme Court of Alabama recently held that the testimony of doctors is not required in order for a trial court to find medical causation. Ex parte Price, [Ms. 87-1457, February 17, 1989] (Ala. 1989). We find that the totality of circumstances in the instant case supports a finding of medical causation here.
Clarke argues that the loosening of Patterson's prosthesis that necessitated its replacement was not caused by this specific accident, but was the result of a gradual deterioration of his artificial hip. The company's argument is based primarily on the testimony of its expert witness, an orthopedic surgeon who had reviewed Patterson's X-rays and medical records, but who did not examine Patterson himself. This physician testified that his review of the X-rays disclosed a chronic reaction between the bone and the cement used to anchor the first prosthesis in place which could not have occurred within a period of a few days. He stated that the failure rate for cemented hip replacements in patients under the age of 30 was nearly 50 percent.
Clarke's expert also testified that Patterson's accident could have accelerated the loosening of the prosthesis or aggravated the loosening process so that it became symptomatic. Our review of the medical records discloses two reports that we find pertinent to this issue. An X-ray report prepared two days after the accident indicates "loosening of the acetabular component" and the possibility of "early changes of loosening in the femoral component." The surgical report dictated by Patterson's treating physician states that the prosthesis was "in the beginning stages of looseness."
We find no evidence in the record that Patterson experienced difficulty with the prosthesis before November 9, 1984. Although he limped when he walked, we find only one occasion about which testimony reflected that Patterson indicated that his leg hurt at all. He did not miss much time from work and performed his duties to the apparent satisfaction of his employer. However, the evidence is uncontroverted that immediately after Patterson climbed off the truck, he experienced pain severe enough to require his hospitalization. *Page 416 
Clarke intimated that Patterson engaged in certain physical activities that increased the likelihood of his problems, but we find no evidence in the record that Patterson did, in fact, engage in physical activities calculated to cause loosening of his prosthesis. Clarke's argument in brief that he did so is not supported by the testimony presented at trial.
This court has defined pre-existing injury or infirmity in terms of its effect on the employee's ability to earn. GoldKist, Inc. v. Nix, 519 So.2d 556 (Ala.Civ.App. 1987). If an employee is able to perform various job-related activities as a normal man, then a pre-existing condition is disregarded for workmen's compensation purposes. Blue Bell, Inc. v. Nichols,479 So.2d 1264 (Ala.Civ.App. 1985). It is well settled that an employer takes an employee as he finds him at the time of employment. Hyster Co. v. Chandler, 461 So.2d 828
(Ala.Civ.App. 1984). An employee is not required to bear the risk of his own physical infirmities when sustaining a job-related injury.Robinson Foundry, Inc. v. Tinsley, 510 So.2d 825
(Ala.Civ.App. 1987). Even if the ongoing reaction between the bone and the cement was causing loosening of Patterson's prosthesis prior to the accident, we find no evidence that such pre-existing condition affected his job performance so as to invoke § 25-5-58, Ala. Code 1975 (1986 Repl.Vol.).
We note that the trial court found that "the plaintiff had previously sustained another injury in 1981 . . . which said injury was a 'permanent injury' within the purview of the Workmen's Compensation laws of Alabama." Although we are not referred to a specific code section by the trial court, Clarke's argument in its brief for apportionment of any liability due to Patterson's pre-existing injury cites §25-5-57(a)(4)e. We merely point out here that any "permanent injury" referred to in § 25-5-57(a)(4)e or f is one which occurred during the course of earlier employment. Those subsections would not be applicable in the instant case.
The trial court's finding that Patterson sustained a compensable injury is due to be affirmed.
We turn now to the issues raised by Patterson.
He first contends that the trial court erred when it refused to allow his vocational expert to testify regarding his opinion as to Patterson's future employability. We agree that such testimony should have been allowed. The witness, a vocational rehabilitation counselor, was qualified, based on his knowledge of the employment industry, his interviews with Patterson, and his review of the medical records, to state such an opinion.Clark Lumber Co. v. Thornton, 360 So.2d 1019 (Ala.Civ.App. 1978). See also Hagler v. Gilliland, 292 Ala. 262,292 So.2d 647 (1974); Unexcelled Manufacturing Corp. v. Ragland,52 Ala. App. 57, 289 So.2d 626 (Ala.Civ.App. 1974). Clarke's objection to this testimony was that the witness failed to administer physical and mental capacities tests to Patterson. That omission would more properly affect the weight to be accorded his testimony, rather than its admissibility. ClarkLumber Co., supra. We find, however, that the trial court's failure to admit this evidence does not mandate reversal. The witness was later permitted to state his opinion that there were no sedentary jobs in the job market that Patterson could do. Therefore, even though the trial court should have admitted the earlier testimony, we believe that error was rendered harmless by the subsequent admission of similar testimony from the same witness. Kriewitz v. Savoy Heating Air ConditioningCo., 396 So.2d 49 (Ala. 1981).
There is merit to Patterson's contentions that the trial court awarded inadequate temporary benefits and should have made a determination as to permanent disability. The extent and type of disability suffered by a workmen's compensation claimant and the amount of compensation to be awarded in any given case are matters which are incumbent upon the trial court to decide. Montgomery v. Mardis, 416 So.2d 1042 (Ala.Civ.App. 1982). Here, after finding that Patterson had suffered a *Page 417 
compensable injury, the trial court went on to state "[t]hat it is inconclusive from the record as to the degree or duration of disability that the plaintiff sustained as a result of the injury." Yet the record seems to indicate that Patterson was on crutches during his post-operative recovery period until June 18, 1985. This was also the last time he saw his doctor.
We realize that a trial court is faced with a difficult task in a case such as this. Nevertheless, it is the duty of the trial court to make some determination as to disability.Edgewood Service Center v. Hogan, 440 So.2d 1076
(Ala.Civ.App. 1983). In doing so, the court should consider all the evidence, including its own observations, and interpret such evidence according to its own best judgment. Edgewood ServiceCenter v. Hogan, supra. The court is not bound by the testimony of expert witnesses, even if the same is uncontroverted, and may assign percentages of disability without expert testimony.DeHart v. Ideal Basic Industries, Inc., supra.
The trial court awarded temporary total disability benefits to Patterson of five-sevenths of one week. No basis for that award is stated in the final judgment, and we can find no support in the record for that amount. Patterson's disability did not end on the day he was discharged from the hospital, as temporary total disability applies to the healing period during which an employee is recovering and unable to work. T G YStores Co. v. Higdon, 437 So.2d 1035 (Ala.Civ.App. 1983). The fact that there were medical complications which prolonged his disability does not adversely affect his entitlement to compensation. Singleton v. Hope Engineering Co., 223 Ala. 538,137 So. 441 (1931). Aggravation of a primary injury by medical or surgical treatment is compensable. See 1 A. Larson, The Lawof Workmen's Compensation, § 13.21 (1985).
On remand, the trial court is directed to determine, from the evidence presented, the degree and duration of disability sustained by Patterson as a result of the injury found by the trial court to be compensable. Also, the trial court is directed to clarify its findings regarding the permanent disability, if any, suffered by Patterson. No benefits were awarded to him based on permanent partial or total disability, even though the trial court found that he had sustained a permanent injury that restricted the types of employment in which he could engage and that he had suffered a loss of ability to earn. In this case the trial court should make a determination of permanent partial or total disability, or a lack thereof. The percentage of permanent disability, if any, may be based upon Patterson's physical disability, age, education, experience, and other such factors which affect his employability and thus his earning capacity. Padgett v.International Paper Co., 470 So.2d 1287 (Ala.Civ.App. 1985).
This case is due to be remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
ROBERTSON and RUSSELL, JJ., concur.