ROBERTSON, Presiding Judge.
This case of first impression deals with the liability of the Alabama Second Injury Trust Fund (SITF) when the first injury was not work-related.
James E. Hagan was employed at Hearn Ford, Inc., when he sustained an injury which caused him to be permanently and totally disabled. After a bench trial, the trial court entered an order on April 18, 1990, finding Hearn Ford to be liable for eighty percent (80%) of said disability, and the other twenty percent (20%) relating to a previous back injury and surgery Hagan suffered in 1980. The trial court ordered that Hearn Ford be liable for 80% of the weekly benefits for 300 weeks and that the SITF be served a copy of the order and a hearing scheduled to determine SITF’s liability as to the remaining 20% of the benefits for 300 weeks as well as Hagan’s permanent total disability benefits after the 300-week period pursuant to the Workmen’s Compensation Act.
Hagan filed a separate action against the SITF also, and that case was consolidated with this case on a motion to consolidate. Hagan and SITF filed a joint stipulation of facts and motion for summary judgment.
The joint stipulation of facts contained, among other things, the following:
“4. That in August 1980, plaintiff was injured in a non-work-related accident when he stepped off the back porch of his home. That the plaintiff sustained a ruptured intervertebral disc at at L5 with nerve root compression on the right. That the plaintiff was operated on Au *213 gust 27, 1980, wherein he underwent an excision of an extruded intervertebral disc fragment at L5-S1. Six months after the surgery, the plaintiff was released to resume his usual activities, but was restricted from any prolonged bending or sitting and from lifting more than 100 pounds. As a result of this injury, the plaintiff was assigned a 5% permanent partial impairment rating to the body as a whole. The plaintiff returned to his normal work with the above stated limitations and restrictions, but with no associated pains or problems as a result of this injury.
“5. That the plaintiffs employer, Hearn Ford, Inc., had prior knowledge of the previous 1980 injury of the plaintiff at the time it employed the plaintiff.
“6. That on April 17, 1987, the plaintiff was employed by Hearn Ford, Inc., and that all the parties were subject to and operating under the Workmen’s Compensation Act of Alabama.
“7. That on April 17, 1987, plaintiff sustained a ruptured intervertebral disc at L4-5 with nerve root compression on the right, as a result of an injury by accident arising out of and in the course of the said employment, of which accident and injury said employer had notice.
“8. That at the time of the injury on April 17, 1987, the plaintiffs average weekly earnings were $450.
[[Image here]]
“14. That because of said limitations and restrictions placed on the plaintiff, the said bodily impairment of the plaintiff, the said severe pain that the plaintiff experiences, the associated problems the plaintiff experiences with his back, and that, from June 24, 1988, the date upon which the plaintiff reached maximum medical improvement, the plaintiff has been, and, is now permanently and totally disabled from working at his normal trade as an automobile mechanic, is unable to seek or obtain gainful employment, or to be retrained for gainful employment.”
(Emphasis added.)
The trial court adopted the joint stipulation of facts as its findings of fact and concluded as a matter of law that Hagan was entitled to recover workmen’s compensation benefits from the SITF. It stated:
“2. This court specifically holds that the plaintiff, James E. Hagan, who suffered a first injury which was non-work-related, and who suffered a subsequent on-the-job second injury, the combined effect of which has rendered him permanently and totally disabled, is entitled to workmen’s compensation benefits from the Second Injury Trust Fund pursuant to Section 25-5-57(a)(4)f. of the Alabama Code (1975).”
The trial court ordered the SITF to pay 20% of the weekly benefits of $300, less attorney’s fee, for 300 weeks, and after the 300-week period to commence payments of $300 per week, less a 15% attorney’s fee, for the duration of Hagan’s total disability. The trial court further awarded a lump sum attorney’s fee of $29,372.55 against the SITF based on Hagan’s life expectancy of 28.78 years. SITF appeals.
The sole issue on appeal is whether an employee, whose first injury was non-work-related and who subsequently suffered an on-the-job compensable injury, the combined effect of which rendered the employee permanently and totally disabled, is entitled to workmen’s compensation benefits from the SITF.

The Original Act

The Workmen’s Compensation Act (Act) was enacted in Alabama in 1919 and became effective January 1, 1920. For purposes of understanding and clarity, we must follow the evolvement of three statutory provisions in the Act and their relationship to the SITF. The original Act provided as follows:
“(e) 1. If an employee has a permanent disability or has previously sustained another injury than that in which he received a subsequent permanent injury by accident such as is specified in the sections herein defining permanent injury he shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident *214 if the earlier disability or injury had not existed.
“(e) 1½. If an employee has previously lost the sight of one eye or lost one leg or lost one arm, and thereafter in the same employment or in the employment of another he should by accident receive additional injuries so as to proximately cause the loss of the sight of both eyes or the loss of both legs or the loss of both arms said employee shall receive three-fourths of the amount provided hereunder for one who has received a permanent total disability and there shall be credited on said three-fourths amount any payments which said employee had received or may receive for his first disability.
[[Image here]]
“(e) 4. If an employee receives a permanent injury as specified in section 13 after having sustained another permanent injury in the same employment, he shall be entitled to compensation for both injuries, but the total compensation shall be paid by extending the period and not by increasing the amount of weekly compensation, and in no case exceeding five hundred weeks. When the previous and subsequent permanent injuries received in the same employment result in total disability compensation shall be payable for permanent total disability, but payments made for the previous injury shall be deducted from the total payment of compensation due.”
(Emphasis added.)
Clearly, the language in the original Act, Section 13(e)lV2, required both injuries to be work-related (in employment). Also, the “same employment” employer must have been subject to the Act when the second injury was incurred. Likewise, the “employment of another” employer must have been subject to the Act because both employers were required to pay benefits of “three-fourths of the amount provided hereunder for ... permanent total disability.”
An employee could have been working for an employer not covered by the Act and incurred a Section 13(e)lV2 injury. Thereafter, if the employer became subject to the Act, and the employee received a second Section 13(e)lV2 disability injury “in the same employment,” that employee would have been eligible for Section 13(e)lV2 benefits. Since the legislature did not distinguish this type (in the same employment) of employee from an employee injured in employment not covered by the Act and who, thereafter, receives his second disabling injury in the employment of another covered by the Act, we must conclude that the legislature intended that the first injury be “in employment” whether covered by the Act or not.
Section 13(e)lV2 is the predecessor of Section 25-5-57(a)(4)f. and was amended by the legislature in 1949 and 1975.
Consequently, since the Act from the beginning required the first injury to be work-related (in employment), we must look at the amendments to this section to determine if the legislative intent ever changed whereby the first injury could be non-work-related, i.e., not in employment, and the SITF be liable.

Creation of the SITF

The SITF was created by the legislature in 1947 in Act No. 689. The accompanying amendment to 13(e)lV2 of the Act was not enacted until the next legislative session in 1949. One can only speculate as to whether the legislature intentionally delayed the accompanying amendment to allow the SITF two years to accumulate funds before incurring any liability, or whether the accompanying legislation suffered a “sine die” and simply did not get passed until 1949.
Act No. 689, 1947 Regular Session, Section 5, contained the following:
“Every employer making a report of an accident in which there is prima facie evidence of a liability against the Second Injury Trust Fund shall so state in said report and upon a settlement between the employer and the employee the Director shall be deemed to have admitted liability against said Trust Fund, unless within sixty calendar days after receipt by the Department of Industrial Rela *215 tions of a copy of the settlement between the employer and the employee the Director shall notify the employer and employee by registered mail sent to their respective last known addresses that as said Trustee he does not consider the Fund liable for any one or more Second Injury Trust Fund payments.”
(Emphasis added.)
The Director of Industrial Relations (Director) is the trustee of the SITF. The original Act provided, as was the law in 1947 and still is, that every employer subject to the Act must keep a record of all injuries for which compensation is claimed or paid and report same to the Department of Industrial Relations (DIR). § 25-5-4. Every settlement of any case made outside circuit court must be reported to the DIR. § 25-5-5. Also, every case disposed of in circuit court must be reported in detail by the clerk to the DIR. § 25-5-6.
Consequently, the trustee of the SITF has available to him a permanent record of all job-related injuries and disabilities covered by the Act. Therefore, upon receipt of a copy of the settlement where there was prima facie evidence of a liability against the SITF, if the DIR records reflected that the employee had previously suffered an appropriate injury, the Director could admit liability. See Allen v. Blankenship, 562 So.2d 515 (Ala.Civ.App.1990). If the records did not reflect such a prior injury, or if the Director’s investigation of the claim did not reveal such a prior work-related injury, the Director could notify the employer and the employee that he did not consider the fund liable, after which an appeal could be taken and the issue tried in circuit court.
The original Act was adopted from the Minnesota compensation law; however, Minnesota’s fund is quite different from Alabama’s SITF. It provides for the employer to pay all benefits to the employee and, thereafter, seek reimbursement from their special compensation fund. However, for the employer to be entitled to secure reimbursement from the fund, among other things, the employee must have been registered with the commissioner of the fund prior to the employee’s subsequent disability. Also, registration must be accompanied by satisfactory evidence of the physical impairment.
In Alabama, the disability benefits are paid directly to the employee from the SITF, but “only if there are sufficient moneys in the trust fund for immediate payment.” § 25-5-73 (emphasis added).

The 1949 Amendment

In Act No. 36, 1949 Regular Session, the legislature amended the aforesaid Section 13(e)lV2 to § 4(E)2 to read as follows:
“2. Certain second permanent injuries.
If any employee has previously lost or lost the use of one eye, one leg, one arm, one foot, or one hand, and thereafter in the same employment or in the employment of another, he should by accident receive additional injuries so as to proximately cause the loss or loss of use of both eyes, both legs, both arms, both feet, or both hands, said employee shall receive compensation equal to the amount provided hereunder for one who has received a permanent total disability, such compensation to be paid by the employer to the extent that such employer would have to pay compensation for the degree of injury that would have resulted from the accident if the earlier disability or injury had not existed and the remainder of the amount of such compensation after the completion of such payments by the employer shall be paid by the Director of Industrial Relations as Trustee from any amounts from time to time standing to his account as such Trustee in the Second Injury Trust Fund.”
(Emphasis added.)
The legislature retained the language of 13(e)l as “§ 4(E)1. Other second permanent injury” and 13(e)4 as § 4E(5). Section 4(E)2 expanded permanent total disability to include the loss of both feet or both hands. The language “in the same employment or in the employment of another” remained verbatim as in the original Act. Clearly, when the SITF and Section 4(E)2 *216 were enacted, the legislature intended that the first injury continue to be work-related, that is, in employment.
From the enactment of Section 4(E)2 in 1949, until it was next amended in 1975, the liability of the SITF was fairly limited. Until 1975, its liability was limited to where an employee had previously lost or lost the use of one eye, one leg, one arm, one foot, or one hand in an employment and, thereafter, in the same employment or in the employment of another subject to the Act, he suffered the loss or loss of use of both eyes, both legs, both arms, both feet, or both hands. Also, as previously stated, it was clear that both injuries must have been work-related and the second injury must have been in employment covered by and subject to the Act. Otherwise, the second injury “in the employment of another” would not be compensable from the SITF.

The 1975 and 1985 Amendments

In 1975, the legislature enacted Act No. 86 to amend the workmen’s compensation laws of Alabama which included
“defining permanent total disability and extending benefits for permanent total disability for the duration of the disability, fixing the employer’s and the second injury trust fund’s liability in the event a second injury produces permanent total disability....”
and in 1985, the legislature rearranged three pertinent sections in the 1975 amendment so the sections would be in consecutive order. Sections 13(e)1, (e)1½, and (e)4 of the original Act have evolved into the following respective sections which is the present state of the law as regards the SITF. It now provides:
“e. Second Permanent Injuries Generally. If an employee has a permanent disability or has previously sustained another injury than that in which he received a subsequent permanent injury by accident, such as is specified in the provisions of this section defining permanent injury, he shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident if the earlier disability or injury had not existed.
“f. Second Permanent Injury Resulting in Permanent Total Disability Where First Injury Not In Same Employment. If an employee receives a permanent injury other than in the same employment, and if the combined effect of the previous and subsequent injury results in permanent total disability, compensation shall be payable for permanent total disability. Compensation for such permanent total disability shall be paid by the employer to the extent that such employer would have to pay compensation for the degree of injury that would have resulted from the accident if the earlier disability or injury had not existed, and the remainder of the amount of such compensation after the completion of such payments by the employer shall be paid by the director of industrial relations as trustee from any amounts from time to time standing to his account as such trustee in the second injury trust fund; provided, that in order to qualify for benefits from the second injury trust fund, the employer must have had prior knowledge of the previous injury of the employee, and such previous injury must have been of a disabling nature which adversely affected the employability of the employee.
“g. Second Permanent Injury in Same Employment Resulting in Permanent Total Disability. If an employee receives a permanent injury as specified in this section after having sustained another permanent injury in the same employment, and if the previous and subsequent injuries result in permanent total disability, compensation shall be payable for permanent total disability only.”
§ 25-5-57(a)(4)e., f., and g., Ala.Code 1975 (emphasis added).
The important changes in this legislation which would impact upon the liability of the SITF were the replacement of the eyes, legs, arms, feet, and hands limitation with the “permanent total disability” as now defined, and the obligation increased on the SITF to pay benefits for the duration of the disability as opposed to previous time limi *217 tations. However, no accompanying legislation to fund the SITF to meet these new obligations and liabilities was enacted. Instead, the legislature removed the “second permanent injury in the same employment” liability from under the SITF and left it liable for only those permanent total disabilities where the first injury was not in the same employment, that is, where the second permanent injury is “in the employment of another” employer subject to the Act.
It is important to note that the legislature retained the language limiting the liability of the employer for prior disabilities or injuries in Section 4(E)1 of the 1949 legislation when they enacted the 1975 and 1985 legislation.
Also, instead of having three sections dealing with previously injured employees, with one type, the “injured in same employment” employee in two sections, we now have sections with each type in a separate section. First, we have the employee, generally, who has a preexisting disability or injury and suffers a second injury covered by the Act. Second, we have the employee who suffered a first injury in employment and, thereafter, receives a second disabling injury “in the employment of another” covered by the Act. Third, we have the employee who suffered a first injury and, thereafter, “in the same employment” suffers a second injury covered by the Act. As previously stated, it was clear that from 1949 until 1975, the first injury must have occurred in employment.

Funding of SITF

The method by which the legislature chooses to fund the SITF would be indicative of the legislative intent as to the liability of the SITF. The original Act creating the SITF provided funding as follows:
“Section 2. In the event death is caused to an employee covered by the Workmen’s Compensation Law by a cause which would otherwise impose liability under said Law on his employer, and there is no person entitled to compensation under the Workmen’s Compensation Law, the employer shall pay to the Director of the Department of Industrial Relations within 18 months the sum of $1,000 to be deposited by said Director as Trustee with the State Treasurer as Custodian of said Second Injury Trust Fund for the benefit of said Second Injury Trust Fund. Provided, that within one year after the date of death of such a person covered by the Workmen’s Compensation Law the employer may discharge his liability to said Second Injury Trust Fund by the payment of the sum of $500. In any case arising out of circumstances for which damages lie under the Employer’s Liability Act, and there is no person to whom judgment under the Employer’s Liability Act may be paid, such judgment as an escheat shall become the property of the Trustee of the Second Injury Trust Fund and the net proceeds thereof (after court costs and lawful expenses of the personal representative) shall be deposited by said Trustee with the State Treasurer for deposit in said Fund.”
In 1955, the legislature reduced the $1000 death payment to $100 for all deaths of employees covered by the Act.

Legislative Intent and Findings

The retention of the language in § 25-5-57(a)(4)e., and the failure of the legislature to expand the method of funding in 1975, clearly indicates a legislative intent that the first injury must continue to be work-related for the SITF to be liable. Had the legislature intended otherwise, it would have repealed § 25-5-57(a)(4)e., it could have stated in § 25-5-57(a)(4)f. that the first injury need not be work-related, and it would have adequately provided for the funding of the SITF to take on the expanded liabilities.
The long-standing rule of statutory construction in Alabama has been that it is the duty of the court to construe each section of a statute consistent with other sections in pari materia. Winner v. Marion County Commission, 415 So.2d 1061 (Ala.1982). “[Although there are occasions when a court must correct or ignore obvious inadvertences in order to give a *218 law the effect which was plainly intended by the legislature, the judiciary cannot and should not, in a republican form of government, usurp the legislative function.” Ex parte Holladay, 466 So.2d 956 (Ala.1985). This court has the duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used and the purpose of the statute. Holladay.
Since the effective date of the Act on January 1,1920, the first injury in § 25-5-57(a)(4)f. had to be work-related, and we find that in 1975 the legislature did not change that requirement. Therefore, for the SITF to be liable where the second injury in the employment of another (not in same employment as first injury) causes permanent total disability, we find that the first injury must have been work-related (in employment).

Conclusion

We note that the law in Alabama is well settled that an employee able to perform his work duties in a normal manner prior to the time of his disabling injury has no preexisting condition for compensation purposes. Speegle v. Dobbs Bros., 545 So.2d 777 (Ala.Civ.App.1989), Gold Kist, Inc. v. Nix, 519 So.2d 556 (Ala.Civ.App.1987), International Paper Co. v. Rogers, 500 So.2d 1102 (Ala.Civ.App.1986).
No transcript of the testimony of the earlier proceeding is available, but from the joint stipulation of facts at the second proceeding, it appears that after the first injury and surgery,
“the plaintiff was released to resume his usual activities, but was restricted from any prolonged bending or sitting and from lifting more than 100 pounds. As a result of this injury, [he] ... was assigned a 5% permanent partial impairment rating to the body as a whole. The plaintiff returned to his normal work ... with no associated pains or problems.”
Also, Hagan’s weekly earnings were $450 at the time he was injured at Hearn Ford working as a mechanic. His only other work experience was hauling pulpwood and logs and working as a motor man on an offshore oil rig.
If the preexisting 5% permanent partial disability did not cause a loss of ability to earn, that disability did not exist to relieve Hearn Ford of liability for permanent total disability benefits. Speegle. “This court has defined preexisting injury or infirmity in terms of its effect on the employee’s ability to earn,” Speegle at 778, and, regardless of a preexisting condition, if Hagan was able to perform his duties prior to the disabling injury, no preexisting disability was present for compensation purposes. Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App.1985); Patterson v. Clark County Motors, Inc., 551 So.2d 412 (Ala.Civ.App.1989).
To place the liability for the employee’s total benefits and attorney fees after 300 weeks on the SITF in this second injury scenario was clearly not the intent of the legislature without some extraordinary expanded funding for the SITF. After the rapid depletion of the fund, totally disabled employees would be without their benefits, and the attorneys would be without their fees, which benefits and fees would otherwise have been paid where the employee was able to perform his duties and had no loss of ability to earn prior to the totally disabling injury. Also, those presently drawing disability benefits from the SITF would lose those benefits if there were not “sufficient moneys in the trust fund.” § 25-5-73.
This case is due to be reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
THIGPEN and RUSSELL, JJ., concur.