THIGPEN, Judge.
This is a workmen’s compensation case.
On October 18, 1990, Elizabeth Ann Black (employee) filed suit for workmen’s compensation benefits which she claimed were due to her because of an on-the-job injury she suffered while employed by Circle “C” Stores, Inc. (Circle C).
Following a non-jury trial, the trial court entered an order finding that the employee suffered an electrical shock injury which arose out of and in the course of her employment with Circle C. The trial court further found, inter alia, that the employee sustained a compensable injury of a temporary nature, and that all benefits due to her had already been paid by Circle C. The trial court also stated that it was not satisfied that the employee had suffered any loss of her ability to work and earn wages and, therefore, denied the employee future earnings benefits. Future “reasonably necessary medical and surgical expenses” were awarded to the employee, however, pursuant to Ala.Code 1975, § 25-5-77.
Circle C filed a motion for declaratory relief, requesting the trial court to determine whether the employee’s hypertension was the result of her on-the-job injury and, accordingly, whether Circle C was responsible for the associated medical expenses. The employee countered by filing a motion for contempt, alleging that Circle C had paid her medical expenses from the date of the injury until trial, but was refusing to pay her current medical expenses.
During a proceeding on these motions, the parties stipulated the following: Prior to trial, Circle C had paid all medical expenses regarding the employee’s injury, including such expenses associated with the employee’s hypertension. Since that time, Circle C has failed to pay any medical benefits. The parties also re-submitted to the trial court for its consideration certain doctors’ depositions which had already been introduced at trial.
After reviewing the depositions and medical bills, the trial court ruled in favor of the employee regarding Circle C’s motion for declaratory relief, and against Circle C *1076 as to the employee’s motion for contempt. Therefore, the trial court ordered Circle C to reimburse the employee $1,798.36 for medical expenses relating primarily to her treatment for hypertension by Dr. Anthony Benchina. Also, Circle C was ordered to pay any future “reasonably necessary medical expenses” related to Dr. Benchina’s treatment of the employee.
Circle C appeals, arguing that the employee failed to establish a causal relationship between her hypertension and her alleged on-the-job injury. Specifically, Circle C argues that the employee failed to establish medical causation, in that Dr. James Chandler, an internist specializing in electrical injuries, testified by deposition that there was no relationship between the employee’s hypertension and her on-the-job accident, and Dr. Benchina could only testify that it was possible that the employee’s hypertension might have been aggravated by the accident.
We first note that our standard of review in a workmen’s compensation case is a two-step process. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). Initially, we must look to see if there is any legal evidence to support the trial court’s findings. If such evidence is found, we must then determine whether any reasonable view of that evidence supports the judgment of the trial court. Eastwood Foods.
We also note that an employee must establish both legal and medical causation in order to claim entitlement to workmen’s compensation benefits. Patterson v. Clarke County Motors, Inc., 551 So.2d 412 (Ala.Civ.App.1989). Patterson further states the following:
“To establish legal causation, the employee must show that he was exposed to a risk or hazard to which he would not have been exposed had he not been performing his job_ To establish medical causation, the employee must show that the hazard or risk to which he was exposed was, in fact, a contributing cause of his injury.” (Citations omitted.)
Patterson, 551 So.2d at 415.
On appeal, Circle C only disputes the existence of medical causation, not legal causation. The record reveals the following information concerning the existence of medical causation. Dr. Benchina, who testified by deposition, first treated the employee in November 1982 for complaints of headaches. In July 1983, he treated the employee for injuries resulting from an automobile accident, but no medication was prescribed for hypertension.
Dr. Benchina testified that, prior to the employee’s work-related accident, the employee’s blood pressure readings sometimes fluctuated, but not to the degree to impair her ability to work. He noted, however, that two blood pressure readings were taken by other medical personnel after the employee’s work-related accident, and these showed an elevation in her blood pressure, but no medications were prescribed for treatment of that elevated blood pressure at that time. Approximately a week after the accident, the employee returned to the emergency room, and was again diagnosed as having hypertension, for which medication was prescribed. The employee also reported to Dr. Benchina that she had been checking her blood pressure at home and she found it to be elevated.
Dr. Benchina further testified that, upon examining the employee approximately two weeks after her accident, her blood pressure measured 170/110, which Dr. Benchi-na described as a “significant elevation.” As a result, he prescribed a different medication, and he also recommended a no-salt diet. According to Dr. Benchina, the employee’s blood pressure was measured at this same high level immediately after her auto accident in July 1983, but it soon decreased and stabilized at a normal level.
Another examination by Dr. Benchina following the employee’s work-related accident revealed that her blood pressure was still elevated and, therefore, Dr. Benchina placed her on two other hypertension medications. The employee was examined by Dr. Benchina over thirty times in the following two-year period due to hypertension. Dr. Benchina stated that the employ *1077 ee’s work-related accident quite possibly aggravated her hypertension, and he stated that continued treatment was necessary to prevent uncontrolled hypertension and its resultant complications.
Dr. Benchina acknowledged that the employee had a history of hypertension and that he had not treated the employee for the three years prior to this work-related accident. Dr. Benchina stated, however, that he treated the employee for hypertension in the early 1980’s, and that his only treatment then was a no-salt diet.
In brief, Circle C placed great reliance on Dr. Chandler’s testimony that his examination of the employee revealed no relationship between her hypertension and the work-related accident. The record revealed, however, that Dr. Chandler examined the employee on only one occasion, and he testified that it was possible that the employee’s work-related accident aggravated her hypertension.
Based on the foregoing, we find there to be legal evidence to support the trial court’s findings, and that a reasonable view of such evidence supports the judgment of the trial court. Eastwood Foods. Accordingly, this case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.