Rebecca Humphrey (the "worker") worked for Health-Tex, Inc. (the "first company"), from 1979 until July 1990. The worker then started working for Center Star Manufacturing of Gadsden (the "second company") in May 1991. It is undisputed that the worker suffered work-related injuries while employed for each company. It is also undisputed that the worker's injuries required medical treatment and surgeries, which she received. The worker sued both companies, seeking workmen's compensation benefits and payment of medical expenses, alleging that she had suffered injuries in the line and scope of her employment at each company. Each company filed answers, alleging that the other company was solely responsible for the payment of the compensation benefits and medical expenses. Following a hearing, the trial court found the worker to have suffered a 71% permanent partial disability and ordered each company to pay certain compensation benefits and certain medical expenses to the worker. Each company filed a post-judgment motion; the trial court denied both motions. Each company appeals, and the worker cross-appeals.
This case is governed by the Workmen's Compensation Act, before the amendments effective May 19, 1992, and the standard of review set out by our supreme court in Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991). Initially, the reviewing court will look to see if any evidence supports the trial court's findings. Id. If it finds such evidence, then it determines whether any reasonable view of the evidence supports the trial court's judgment. Id. Where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome. Ex parte Veazey,637 So.2d 1348 (Ala. 1993). This standard of review applies only to the trial court's findings of fact and not to its conclusions of law.Ex parte Cash, 624 So.2d 576 (Ala. 1993).
 I. The Worker's Cross-Appeal
The worker argues that the trial court erred by not finding her to have suffered a permanent total disability. The worker's own vocational expert, Dr. Claude Peacock, testified that the worker's vocational disability ranged from 67% to 71%. Because this evidence supports the trial court's finding that the worker suffered a 71% permanent partial disability, this court must uphold that finding. Eastwood Foods, supra; Veazey, supra. Therefore, we affirm that portion of the trial court's judgment finding that the worker suffered a 71% permanent partial disability.
 II. The Companies' Appeals
To determine which company is liable in a "successive injury" case, such as this case, Alabama applies the "last injurious exposure rule," which this court adopted in North RiverIns. Co. v. Purser, 608 So.2d 1379 (Ala.Civ.App. 1992). Judge Thigpen, writing for the court in that case, stated:
 "The `last injurious exposure' rule is the majority rule in successive-insurer [or successive-company] cases. See 4 A. Larson, The Law of Workmen's Compensation, § 95.20 (1989). Under this analysis, liability falls upon the carrier [or company] covering risk at the time of the most recent injury bearing a causal relation to the disability. The characterization of the second injury as a new injury, an aggravation of a prior injury, or a recurrence of an old injury determines which insurer [or company] is liable. Larson at § 95.11."
Id. at 1382. If the second injury is a new injury or an aggravation of a prior injury, then the second company is liable for the worker's compensation benefits and medical expenses; however, if the second injury is a recurrence of the original injury, then the first company is liable. Id. Judge *Page 904 
Thigpen then explained the policy supporting the adoption of the "last injurious injury" rule:
 "It appears that in the absence of express statutory authority, public policy may best be served by adopting the `last injurious exposure' rule in Alabama. First, this will allow Alabama to conform with the majority of other jurisdictions. Larson at § 95.20. Second, it spares litigants the difficult task of apportioning blame in successive-injury cases. Third, it is easier to administer than its alternatives, thus resulting in judicial economy. Fourth, it is more consistent with Alabama's normal rule for pre-existing injuries, i.e., that the [company] (and the [company's] insurance carrier) `takes a [worker] as [it] finds [her] at the time of employment.' Patterson v. Clarke County Motors, Inc., 551 So.2d 412, 416 (Ala.Civ.App. 1989); see also Merico, Inc. v. Sparks, 567 So.2d 315
(Ala.Civ.App. 1990)."
The first company argues that the worker suffered an aggravation of the first injury during her employment with the second company, and, therefore, that under the "last injurious exposure rule" the second company is liable for her benefits and expenses. The second company argues that the worker suffered a recurrence of the first injury, not an aggravation, and that the first company is liable under the rule.
The trial court ordered the first company to pay: (1) temporary total-disability benefits from August 17, 1990, to September 17, 1990; (2) permanent partial-disability benefits at the rate of 71% for September 6, 1994, to February 24, 1998; (3) future permanent partial disability benefits for 92 weeks and 2 days; (4) all medical expenses incurred by the worker for treatment performed by Dr. Robert Oliver, her treating physician, for July 1990 through April 1991; (5) one-half of the worker's future medical expenses; and (6) a 15% attorney fee based on the awards above. The first company concedes its liability for the first and fourth items above, but argues that the trial court erred by ordering it to pay the other benefits and expenses. The trial court ordered the second company to pay: (1) temporary total disability benefits from April 22, 1992, to April 29, 1992, from September 15, 1993, to January 1, 1994, and from July 27, 1994, to September 6, 1994; (2) all medical expenses incurred by the worker from May 1991 to September 5, 1994, for treatment provided by Dr. Oliver; (3) one-half of the worker's future medical expenses from September 12, 1994, forward for treatment provided by or recommended by Dr. Oliver. The second company argues that the trial court erred by ordering it to pay any benefits or medical expenses to the worker. The trial court stated in its judgment:
 "While an employee of [the second company], the [worker] suffered numerous aggravations and/or a general worsening of her bilateral upper extremity condition all as a direct and proximate result of the repetitive flexion, extension and use required of her hands and wrists bilaterally. As a result of this continuous activity, the plaintiff began to experience the symptomatology of bilateral carpal tunnel syndrome and ultimately had to undergo additional surgeries by Dr. Robert Oliver.
". . . .
 ". . . [T]he Court finds and determines that as a result of the injuries suffered by the [worker] while working in the line and scope of her employment for [the first company] (which said injury was Bilateral Carpal Tunnel Syndrome) and the aggravation to these injuries and worsening of these injuries while working in the line and scope of her employment at [the second company], . . . the [worker] has suffered a substantial loss of earning capacity and is now 71 percent vocationally disabled and has suffered a 71 percent loss of ability to earn a living."
(Emphasis added.)
The trial court stated twice in its judgment that the worker suffered an aggravation to her condition during her employment at the second company. After reviewing the record, we conclude that the *Page 905 
trial court properly characterized the worker's second onset of carpal tunnel syndrome, suffered while she was employed at the second company, as an aggravation of her first onset, which she suffered during her employment with the first company. The record contains evidence indicating that the worker's subsequent carpal-tunnel-syndrome symptoms were caused by her work activities at the second company. The worker testified that she was not experiencing problems when she first started working for the second company, but that after a few months of performing her repetitive-motion sewing duties she began to experience pain and numbness characteristic of carpal tunnel syndrome. The worker's treating physician also testified that her work at the second company contributed to her subsequent carpal tunnel syndrome.
The evidence supports the trial court's finding that the worker suffered an aggravation rather than a recurrence of her carpal tunnel syndrome. However, we conclude that the trial court made a legal error in its application of the "last injurious exposure rule." Because the record supports the trial court's finding that the worker suffered an aggravation, the trial court should have ordered the second company to be solely liable for the worker's compensation benefits. North River, supra. Therefore, we reverse the portions of the trial court's judgment ordering the first company to pay any of the worker's benefits and expenses and remand the cause for the trial court to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Yates, Monroe, and Thompson, JJ., concur.
Robertson, P.J., concurs in the result.