MURDOCK, Judge.
In February 1998, Tommy Lee Williams filed a complaint against Mead Coated Board, Inc. (“Mead”), seeking workers’ compensation benefits. Following an ore tenus proceeding, the trial court in March 2001 entered a judgment in favor of Mead. *1060 Williams appealed. On September 18, 2001, this court remanded the case to the trial court for that court to enter a judgment complying with § 25-5-88, Ala.Code 1975. On September 20, 2001, the trial court, in accordance with the order of this court, entered an amended judgment stating that Williams’s injury
“occurred as a result of medical treatment subsequent to any work related injury [and therefore the injury complained of did not occur while [Williams] was working on the premises or at the direction of [Mead]. The court is of the opinion ... that in order for an injury to be compensable under § 25-5-88, Ala. Code 1975, an injury must have occurred either on the premises of [Mead] or while [Williams] was working at the direction of [Mead].”
On appeal, Williams contends that Mead should be held liable for the injuries he allegedly sustained while undergoing authorized medical treatment.
This case is governed by the 1992 Workers’ Compensation Act. The Act provides that a trial court’s findings of fact will not be reversed if they are supported by substantial evidence. Section 25-5-81(e)(2), Ala.Code 1975. Our Supreme Court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
A review of the record reveals the following pertinent facts. At the time of the hearing Williams was 55 years old. He worked for Mead from 1966 until 1997, when he was terminated. Williams testified that in 1993 he worked as a “control room operator” and that his job involved operating a crane and controlling the “debarking system” wherein wood would be sent through conveyors and would then be taken to a “chipper” to be cut. Williams’s job also involved changing the knives on the chipper and rebuilding the “chipper” machine when necessary.
Williams testified that in February 1993, while he was changing a part on the chipper, his right shoulder was injured. He was sent to the Hughston Clinic, where Dr. George McCluskey performed rotator-cuff repair surgery. Following the surgery, Williams attended physical therapy. Williams claimed that his right shoulder was about 95% healthy after that surgery. Williams then returned to his regular job, but in January 1994, while rebuilding the same piece of equipment, he tore the rota-tor cuff in his left shoulder. In April 1994, Dr. McCluskey performed surgery on the left shoulder, and Williams subsequently underwent physical therapy. Williams testified that in September 1994, he continued to have pain in his left shoulder.
In October 1994, an arthrogram revealed that Williams’s left rotator cuff was torn; a second surgery on that cuff ensued in October 1994, followed by physical therapy. Williams stated that after his second surgery, he was “doing fine.” Following the completion of physical therapy stemming from the second surgery on his left shoulder, at Dr. McCluskey’s recommendation, Williams attended a ‘Work Assessment and Readiness Program,” also known as the WAR” program; the program had been started by Dr. McCluskey. Williams testified that he had not been given a choice as to a physical-therapy program and that he had followed the instructions of Mead as to treatment.
On May 3, 1995, while participating in the WAR program, Williams testified that the following occurred:
*1061 “We tried this particular exercise this one time. This physical therapist had reviewed films of [my] job description, and what he had me to do was supposedly simulate changing the second bit knife out of the chipper. But I knew that we hadn’t worked up to this stress wise[;] so we had been lifting the same amount of weight supposedly at belt buckle level, but we had never tried it at shoulder level going up.... So I told the therapist, I said we hadn’t worked up to that in between, so he said try it. So I grabbed it, went to go up, and you [could] hear the arm pop 20 feet away.... [I]t was a painful pop. As I was coming down, I tried to come back up so the rack wouldn’t fall on me, and it made two crunching grinding noises, and [my left shoulder] has never stopped hurting since.”
Following this injury, Williams returned to Dr. McCluskey, who performed an arth-rogram. Dr. McCluskey informed Williams that the rotator cuff was still in place and that there was nothing more he could do. Dr. McCluskey noted the following after an appointment with Williams on June 14,1995:
“It is my opinion today that the episode [Williams] had while participating in the WAN program at Rehabilitation Services was a strain of his rotator cuff that did not re-tear the cuff and is something that will not interfere with the long-term prognosis of his shoulder. It will, however, cause us to back off on the exercises and on his work activities for a short time until it resolves.”
Williams testified that he cannot use his left shoulder and is unable to work. Williams stated that he left the WAR program with a reinjured left shoulder and a back injury. Mead stopped paying Williams workers’ compensation benefits in January 1997 and terminated Williams’s employment in December 1997. Williams testified that Mead personnel had thought that there was nothing wrong with him and that he did not want to return to work.
Williams has not worked since 1995. Williams has received $1,393 a month in Social Security benefits, based upon an administrative determination of total disability, since May 1999, and he has received $605 in disability retirement from Mead since March 2000. Williams is also qualified to receive Medicare benefits.
Williams testified that in 1998, while reviewing records for an arbitration meeting regarding his termination, he had come across medical records of Dr. McCluskey that revealed that the 1995 arthrogram performed following Williams’s injury at WAR had in fact detected a tear in his left rotator cuff of which Williams had not been informed. Following Williams’s discovery of this information, Williams underwent an MRI in 1999 that also revealed the existence of a tear in his left shoulder. Following the MRI, Dr. McCluskey stated that arthroscopic surgery would need to be performed on the shoulder to determine the amount of damage to the shoulder and whether the damage was work related. Williams testified that the parties had reached an impasse regarding the surgery because if Dr. McCluskey found the damage not to be work related, Mead would not pay for the surgery. Williams could not afford to pay the costs of the procedure, so the procedure was not performed.
Dr. McCluskey testified that he had recommended the WAR program for Williams; he further stated that: “I’m not disputing that [Williams] might have strained his shoulder or hurt his shoulder in some way in the WAR program.” Dr. McCluskey testified that he had recommended that an arthroscopic evaluation be undertaken, but that Mead had declined to authorize such an evaluation. He further stated that until such an evaluation can be done, one cannot say whether Williams’s *1062 condition is or is not a product of the original injury or whether it arose out of the care associated with the original injury.
Mead takes the position that Williams’s current condition is a separate, independent injury resulting from the actions of a physical therapist and that Mead is not responsible for paying benefits under the Act with respect to such an injury.
In Patterson v. Clarke County Motors, Inc., 551 So.2d 412 (Ala.Civ.App.1989), this court held that “[aggravation of a primary injury by medical or surgical treatment is compensable.” 551 So.2d at 417 (citing 1 A. Larson, The Law of Workmen’s Compensation, § 13.21 (1985)). See also Easterly v. Beaulieu of America, Inc., 703 So.2d 397 (Ala.Civ.App.1997). We therefore hold that the trial court erred in holding that Williams’s injury was not compensable. The record clearly reveals that the injury resulted from Williams’s physical therapy; there is no evidence to the contrary. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ„ concur.