The former employer (defendant) appealed from an adverse decision in a workmen's compenation case and raises two issues through able counsel: (1) a lack of legal evidence to support the trial court's finding of a 30% permanent partial loss of the employee's ability to earn and (2) an evidentiary issue.
This is the second appeal of this case. Our first opinion is reported in Cook v. Munn, 521 So.2d 1341
(Ala.Civ.App. 1988).
The trial was held before the circuit court in June 1987.
The employee was born in 1960. He completed the ninth grade in school and failed the tenth. His employment history is one which involves physical labor.
While performing his regular duties for the defendant, the employee ruptured his left groin on February 1, 1985. As a result, his first hernia operation was on March 18, 1985, but that same rupture reappeared on three different subsequent occasions, which resulted in additional hernia surgery being performed on him in January, June, and December 1986. In short, he had four hernia operations which resulted from the February 1, 1985, job inquiry.
The employee testified that he still has constant pain. When he bends over or walks a lot, he still feels a "whole lot" of pain. His legs and side bother him when he reclines, and he has trouble sleeping at *Page 883 
night. When he sits, he is troubled by the net which the doctor placed in his side. He further testified as follows:
 "Q. Have you been able to lift anything since your last operation?
 "A. No, sir. I've been scared to lift anything. The most I've picked up since I've been out of the hospital is about 25 pounds.
 "Q. When you pick up anything, do you have any pain?
 "A. Yes, sir. I can feel stuff in my stomach when I pick up anything at all.
 "Q. If you would, stand up, please, sir, and turn to the court and show the judge where that netting is or where it would be in your side.
 "A. Right there is the corner of it (indicating). It's been aggravating me since I got out of the hospital, but now it's starting to turn red around there. You can feel the corner of it right there (indicating), and that right there has got a sharp edge to it that gouges me when I'm sitting down or when I'm squatting or something like that."
He testified that after the injury, he could not keep a job for long because of his hernia. He worked on a sod farm after he was released to resume his normal activities and duties by the surgeon who was furnished by the defendant, but the employee was soon laid off because he could not perform his job since using a farm tractor bothered him "so bad." He ceased to work with a pest control company because of problems created by crawling on his hands and knees underneath houses and being constantly bent over. He has co-driven an eighteen wheeler rig on cross-country hauls, but bouncing up and down in the truck all of the time created pain. He no longer drives that truck because the truck's owner ceased leasing it.
Dr. Foss, a general surgeon who was provided by the defendant or the defendant's insurance carrier, performed the first, second, and fourth hernia operations upon the employee. While he stated that the employee's prognosis is good in his judgment and that he had released the employee to perform his normal duties, the surgeon further testified that it is conceivable that the employee is still having continuing and ongoing pain and that it is possible that the employee will have a further reoccurrence of the hernia because of the employee's "awful track history."
Dr. Hark has a Ph.D. in psychology and is a licensed psychologist in Georgia and Alabama. He administered certain tests to the employee. The employee's full scale I.Q. was 82, which is higher than only about 15% of the people in his age group. His grade levels for various subjects were as follows: reading, sixth grade; spelling, third grade; and arithmetic, fifth grade. In the psychologist's opinion the employee "just isn't a well-educated person, and he's not very bright."
Dr. Hark further testified that there is a suggestion in the depositions which were provided to him that the employee should only do light lifting. While no physician had said that the employee could not lift more than twenty pounds, which is a matter within the field of the physicians and which is not within the psychologist's field, he assumed that the employee should not lift over twenty pounds. He reached that conclusion from his own assumption and from his "own knowledge over what would be a realistic limitation for someone who has had multiple hernia repairs." It was the psychologist's opinion or conclusion that, with a twenty-pound lifting limitation, the employee would be capable of working no more than 10% to 15% of those jobs that exist in the economy that he would be eligible for, that he could compete for.
To that 10% to 15% opinion, the defendant later objected and moved to strike it on two occasions, the stated objection being that it was based only upon Dr. Hark's unfounded assumption that the employee should not lift more than twenty pounds. The trial court overruled the defendant's objections and/or motions to strike. When the ruling was first made, the trial court stated that it would consider that opinion in view of the fact that it was based upon the doctor's assumption rather than upon facts. In the second instance, the trial court stated *Page 884 
that the court would consider how the opinion was reached.
Dr. Hark further testified that, if the employee's physical condition ever returned to normal, 100% of the job market would then be open to him.
We will first consider the finding of the trial court that the employee suffered a 30% partial loss of his ability to earn. In our limited factual review of workmen's compensation cases, this court does not weigh the evidence; however, where a factual issue is made, we are required to look to all of the evidence in order to determine whether or not the judgment of the trial court is supported by any legal evidence, and, if such supportive evidence is present, we must affirm the judgment of the trial court. Transco Energy Co. v.Tyson, 497 So.2d 184 (Ala.Civ.App. 1986); Suit v.Hudson Metals, Inc., 414 So.2d 115 (Ala.Civ.App. 1982). In workmen's compensation cases an expert's opinion as to the percentage of disability or the percentage of loss of earning capacity is not binding upon the trial court, which must look to the entire evidence and to its own observations in determining the extent of such a loss. Blue Bell, Inc. v.Nichols, 479 So.2d 1264 (Ala.Civ.App. 1985). Even without considering the objected to testimony of Dr. Hark, we believe that the other evidence is adequate and sufficient to satisfy our standard of review. Accordingly, there was no error as to this issue.
We determine that the evidence was adequate upon which to predicate the admission of Dr. Hark's opinion. While it was admissible, the weight of that opinion was for the trial court. The trial court in substance stated that it would consider the psychologist's assumption in determining the weight to be given to his opinion. In a nonjury trial the weight to be given to any and all of the evidence is a matter for the trial court to determine. Robinson v. McElroy, 435 So.2d 742
(Ala.Civ.App. 1983).
Here, the trial court determined that the employee's loss of ability to work amounted to 30%, while Dr. Hark's opinion was that the employee's job availability, his capacity to earn a living, had been affected by 85% to 90%. It is obvious from the variance between the two that the trial court gave little or no credence to Dr. Hark's opinion, but that the trial court looked to the entire evidence and to its own observations in determining the extent of the employee's loss of earning capacity. Blue Bell, Inc., 479 So.2d 1264.
However, even if the trial court had erroneously admitted that opinion of Dr. Hark into evidence, a reversal on that account would not be authorized in this case. In a nonjury case an error in the admission of evidence does not authorize a reversal, provided the judgment of the trial court is otherwise sustained by legal evidence, unless the improper admission of evidence probably injuriously affected the substantial rights of the parties in the opinion of the appellate court reviewing the case after an examination of the entire cause. McDuffiev. First National Bank, 450 So.2d 451 (Ala. 1984); Rule 45, Alabama Rules of Appellate Procedure. We do not find that Dr. Hark's opinion probably injuriously affected the substantial rights of the parties because, as we have previously indicated, the judgment was supported by other legal evidence, and it is not apparent that the trial court relied to any material extent upon Dr. Hark's opinion. McDuffie,450 So.2d 451.
We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 885