Following an ore tenus proceeding, the trial court found that Lynda Williams (employee) had developed carpal tunnel syndrome arising out of and in the course of her employment with Lee Apparel Company (employer). The court further found the employee to be permanently disabled to the extent of 20% of the body as a whole and held that she had sustained a 20% loss in earning ability. Benefits were awarded accordingly. The employee appeals, contending that the trial court erred in failing to find that she was permanently and totally disabled. We affirm.
At the outset we note that appellate review in workers' compensation cases is a two-step process. First, this court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, this court will then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
The record reveals that the employee began work as a seamstress at the employer's clothing manufacture plant in July 1987 and that she began to experience numbness and pain in her hands in mid-August 1987. She subsequently underwent a "carpal tunnel release," a surgical procedure involving the cutting of a thickened ligament putting pressure on the median nerve in the wrist and hand. This procedure was performed on the right hand in August 1987 and on the left hand in October 1987. The treating physician released the employee to return to work in November 1987; however, on the day she returned to the plant, she was laid off by the employer, apparently because no work was available.
The record shows that although the employee has applied for employment at several other locations, she has not worked since 1987. In August 1989 and January 1990, following complaints of continued pain, the employee underwent second surgery on each of her hands in order to re-explore the results of the original surgery.
At trial the employee testified that the pain and numbness in her hands continued after both the first and second surgical procedures and that there are some days when her hands hurt continuously. She stated that when she walks, she cannot swing her arms in a normal manner because this causes pain in her hands, and that she cannot perform simple household chores or yardwork without experiencing pain. She indicated that she cannot lift heavy kitchen utensils, cannot hold a mop, cannot carry groceries to and from her car, and is required to handle a coffee cup with both hands due to weakness in her wrists.
The record also reveals that in July 1988 the employee applied for Social Security disability benefits, stating on her application that she suffered from bone deterioration, blindness in her right eye, and pain and weakness in her hands. She further stated on this application that she did not feel that she was disabled until the end of July 1988.
Dr. Michael Lyons, the orthopedic surgeon who performed the 1989 and 1990 procedures on the employee's hands, testified by deposition that the employee had considerable scar tissue around the site of the original surgery and that it was his opinion that the median nerves in both of the employee's hands had been permanently damaged. Based on the results of strength and pain tests administered to the employee following surgery, Dr. Lyons believed that the employee was unable to perform any task requiring her to lift more than one pound and that she could not work at any job requiring repetitive use of *Page 412 
her hands. It was also Dr. Lyons's opinion that the employee's condition was permanent and that she was "basically unemployable."
However, Dr. Evan Zeiger, the neurosurgeon who performed the original carpal tunnel release surgery on the employee in 1987, testified by deposition that it was his opinion that the employee had no permanent physical impairments as a result of carpal tunnel syndrome and that he did not anticipate a need for any future medical treatment to her hands. He did not place any work restrictions on the employee after surgery and was of the opinion that there was no medical reason why she could not work. Dr. Zeiger indicated that carpal tunnel release surgery was successful 99% of the time. He also testified that, after the original surgery, the employee never voiced any complaints indicating to him that she had nerve damage in her hands and that he would not expect any nerve damage or impingement to have developed since his last consultation with the employee. He stated that, to his knowledge, the employee never contacted him or his office for further appointments or treatment after November 1987.
The trial court also considered the testimony of Myrtice Carr, an employment specialist who interviewed the employee, administered vocational tests, reviewed medical records, and conducted a labor market survey before arriving at the opinion that the employee had suffered a 6% loss of her ability to earn. Also testifying at trial was Paul Nichols, a private investigator who stated that on July 6, 1991, he observed the employee raise a rake above her head and, with a wrist action, slap the side of a tree to knock apples down. A surveillance video prepared by Nichols in support of his testimony was entered into evidence and viewed by the trial court.
The employee contends that the trial court's findings as to her disability and loss of earning capacity were not supported by the legal evidence. She argues that her own testimony and the testimony of Dr. Lyons indicated that she is permanently and totally disabled. The employer, however, maintains that there was substantial evidence to support the judgment of the trial court.
After carefully reviewing the record, we find that a reasonable view of the evidence supports the trial court's determination that the employee's loss of earning ability was only 20%. While there was sharp disagreement between Dr. Lyons and Dr. Zeiger as to the extent of the employee's disability, the trial court in a workers' compensation case has considerable discretion in determining an employee's percentage of disability or loss of earning ability. Cook v. Munn,528 So.2d 881 (Ala.Civ.App. 1988). We would note that the trial court would not have been bound by the testimony of Dr. Lyons, even if his testimony was uncontroverted. See DeHart v. IdealBasic Industries, Inc., 527 So.2d 136 (Ala.Civ.App. 1988).
Further, the court heard testimony from the employment specialist that the employee's loss of earning capacity was as low as 6%. There was evidence presented concerning the employee's age, educational background, employment history, and mental acuity. Because the trial court was in this instance the finder of fact, we presume that it considered such evidence as was before it. See Orkin Exterminating Co. v. Williams,389 So.2d 935 (Ala.Civ.App. 1980).
Finally, the credibility of the employee's testimony regarding her pain and inability to work was placed into question by the testimony of the private investigator, by the evidence presented on the surveillance video, and by statements the employee had made on her Social Security application. The trial court is in the best position to observe the demeanor of the employee and other witnesses. Dees v. Daleville Florist,408 So.2d 155 (Ala.Civ.App. 1981). In arriving at its judgment, the court may consider all evidence, including its own observations, and interpret it according to its own best judgment. International Paper Co. v. Rogers, 500 So.2d 1102
(Ala.Civ.App. 1986). On appeal, this court will not reweigh the evidence or *Page 413 
make any determinations as to the sufficiency thereof.Cook, 528 So.2d 881.
The employee asserts that the trial court erred by accepting into evidence a written report prepared by the employment specialist regarding her findings on the employee's disability rating. However, disregarding our view of the admissibility of this evidence, we find that there is other sufficient evidence in the record, both medical and nonmedical, to support the trial court's judgment. Therefore, we hold that the trial court's judgment was not tainted by large quantities of illegal evidence.
If any legal evidence supports the trial court's findings and any reasonable view of that evidence supports the trial court's judgment, this court will affirm. Eastwood Foods, 575 So.2d 91. Consequently, in light of our standard of review, we must affirm the judgment of the trial court.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.