In this workers' compensation case, we granted the petition of the Alabama Insurance Guaranty Association (hereinafter referred to as the "AIGA") for a writ of certiorari in order to review the judgment of the Court of Civil Appeals. That court had reversed the trial court's determination that a worker was not totally and permanently disabled.
In January 1980, Corene Hinkle was involved in a work-related automobile accident that caused injury to her neck and lower back. She received medical and surgical treatment, as well as extensive physical therapy. She sued for workers' compensation benefits. Her physicians testified at the trial that, because of her pain and the resulting psychological problems, she was not able to be gainfully employed, The trial court found her to be totally and permanently disabled.
The present action was filed by the AIGA, as successor-in-interest to Hinkle's employer, in November 1991, pursuant to the authority granted by Ala. Code 1975, §25-5-57(a)(4)b.[1] The AIGA petitioned the trial court to set aside its prior determination that Hinkle was totally and permanently disabled. In support of its petition, the AIGA submitted deposition testimony from Dr. Graham Howorth, Jr., an orthopedic surgeon, and Dr. H.E. Logue, a psychiatrist. The AIGA also introduced into evidence surveillance videotapes depicting Hinkle's daily activities. In response, Hinkle submitted the depositions of Dr: Ronald Hillyer and Dr. Chester Jenkins. After reviewing the evidence presented, the trial court ruled in favor of the AIGA and terminated Hinkle's benefits. Hinkle appealed, and the Court of Civil Appeals reversed the judgment of the trial court. Hinkle v. AlabamaInsurance Guaranty Association, 667 So.2d 92 (Ala.Civ.App. 1994). In reversing, the Court of Civil Appeals held that "no reasonable view of the sparse evidence stated as the basis of the judgment below supports that judgment." 667 So.2d at 96.
The Court of Civil Appeals, in its opinion, set out the following law and standard of review for workers' compensation cases involving findings of permanent and total disability:
 "The burden of persuasion in a § 25-5-57(a)(4)b. determination is on the employer. Cerrock Wire Cable Co. v. Johnson, 533 So.2d 622 (Ala.Civ.App. 1988). Upon hearing the evidence, the court must revisit the test for permanent total disability and determine if the once-proved disability has now been removed.
 "The test for permanent total disability is the inability to perform one's trade and the inability to find gainful employment. Mead Paper Co. v. Brizendine, 575 So.2d 571 (Ala.Civ.App. 1990). Total disability does not mean entire physical disability or absolute helplessness. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988). It is the duty of the trial court to make some determination as to the extent of disability. Genpak. The trial court is not bound by expert testimony. Genpak. In making the determination, the court must consider all the evidence, including its own observations, and interpret it to its own best judgment. Genpak.
 "In a workmen's compensation case, this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. If a reasonable review of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. *Page 99 
from. Ex parte Eastwood Foods, Inc., 575 So.2d 91
(Ala. 1991). The new and revised Workers' Compensation Act passed by the legislature and effective August 1992 does not apply to this case. Henderson v. Johnson, 632 So.2d 488 (Ala.Civ.App. 1993)."
Hinkle, 667 So.2d at 94.
The Court of Civil Appeals, in applying the law stated in its opinion, disagreed with the trial court's interpretation of the same evidence. In its opinion, the court explains its reasoning as follows: "It appears that the trial court's decision was based primarily on Dr. Logue's assessment and on the videotapes. . . . We are . . . disturbed that so much emphasis has been placed on the videotapes. We have viewed the videotapes and find them to be unremarkable." 667 So.2d at 96.
The Court of Civil Appeals seems to be reweighing the evidence in this case. Hinkle agrees with the determination of the Court of Civil Appeals that the surveillance evidence is "unremarkable." Hinkle further challenges this Court, in her brief, to review the videotapes and photographs, and she insists that this Court, too, will find them "unremarkable."
We have reviewed the videotapes that caused the trial court to change its determination, and we find that the surveillance evidence is "remarkable." We believe that the Court of Civil Appeals failed to properly apply the standard of review established by this Court. This Court wrote in Ex parte Veazey,637 So.2d 1348 (Ala. 1993):
 "[C]onsistent with the standard set out in Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93 (Ala. 1991), a reviewing court is to determine not whether it would have found [the worker] — unquestionably the victim of tragic misfortune — to be totally disabled, but whether the lesser degree of disability found by the trial court is supported by legal evidence, 'any reasonable view of [which] supports the . . . judgment.' (Emphasis added [in Veazey].) Where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome."
637 So.2d at 1349.
Thus, applying the standard of review set out in Ex parteVeazey, the reviewing court must decide whether there was any "legal evidence" to support the trial court's findings and whether a reasonable review of that evidence supports the judgment of the trial court.
The trial court made the following findings of fact:
 "There is medical testimony that supports Defendant's claims.
 "The most convincing evidence in this case [is] the photographs and videotapes secretly made of the defendant by AIGA. The photographs and video show defendant engaged in various activities, including getting in and out of [an] automobile, including looking over both shoulders prior to backing up; bending into the open trunk compartment; shopping at various stores; painting a poster; apparently cleaning a swimming pool; and carrying groceries.
 "The videos were taken on seven different days (three in 1991 and four in 1993). In none of these photographs and videos does the defendant exhibit any evidence of pain, difficulty, or hesitancy in movement, or restricted physical activity. In contrast to her courtroom demeanor, there are no grimaces of pain.
 "A picture is worth a thousand words. These photographs and video lead to the conclusion that Defendant is not totally and permanently disabled at this time."
(Emphasis added.)
Before her injury, Hinkle was a bookkeeper for Lawler Mobile Homes of Opelika, Alabama. Hinkle testified, at the original trial, that her job duties included typing, filing, making bookkeeping entries, and running errands (Exhibit 3, p. 107). The videotaped evidence showed that Hinkle could drive from Opelika to Alexander City, Alabama (approximately 50 miles) without stopping; it showed her filling her own gasoline tank; it showed her performing several different tasks around her house, including cleaning *Page 100 
her pool and spray painting; and it showed her bending over, and turning her head, without any sign of pain. The trial judge stated that Hinkle's activity displayed on the video was completely different from her demeanor in court, where she grimaced in pain. The AIGA, in addition, presented expert medical testimony that corroborated the surveillance evidence. Dr. Howorth, a board certified orthopedic surgeon, did a complete physical examination of Hinkle and concluded that she exhibited no signs of muscle wasting, that her motion in her spine was nearly normal, and that her overall strength and gross ability to do physical tests were within acceptable limits. On the question of sustaining gainful employment, he stated "that there would be something within the limits of her physical capacity that she may be able to do." (Exhibit 8, pp. 13-27.) The AIGA further proffered the testimony of a psychiatrist, Dr. Logue. Dr. Logue concluded, after examining Hinkle and reviewing the video surveillance, that Hinkle's activities directly contradict her statements to him regarding physical functions that she said she could not do without pain. He judged that Hinkle exhibited a conscious effort to hide something rather than a subconscious problem. (Supp.Vol. pp. 49-53.)
The surveillance evidence and the testimony of AIGA's experts were properly admitted at trial, and they qualify as "legal evidence" under Ex parte Eastwood Foods and Ex parte Veazey.
That "legal evidence" supports the trial judge's decision that Hinkle was not permanently and totally disabled. Therefore, we must look to see if a reasonable review of the "legal evidence" supports the decision of the trial court.
The holding of the Court of Civil Appeals contradicts prior holdings by that court relating to the trial court's consideration of its own observations of the witnesses in arriving at its judgment:
 "It is well settled that in arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observation of the witnesses. The trial court may then interpret what it has heard and observed, according to its own best judgment. Armstrong v. Lewis Associates Construction Co., 469 So.2d 605
(Ala.Civ.App. 1984)."
USX Corp. v. Burton, 611 So.2d 1078, at 1080 (Ala.Civ.App. 1992).
In the present case the trial judge stated in his findings of fact that he relied on his observations of Hinkle's demeanor in court to determine whether she was permanently and totally disabled.
In Williams v. Lee Apparel Co., 610 So.2d 410 (Ala.Civ.App. 1992), the Court of Civil Appeals affirmed a trial court's finding that an employee was not permanently and totally disabled, despite her claims and despite the testimony of expert witnesses that she was basically unemployable. The Court of Civil Appeals wrote:
 "After carefully reviewing the record, we find that a reasonable view of the evidence supports the trial court's determination that the employee's loss of earning ability was only 20%. While there was sharp disagreement between Dr. Lyons and Dr. Zeiger as to the extent of the employee's disability, the trial court in a workers' compensation case has considerable discretion in determining an employee's percentage of disability or loss of earning ability. Cook v. Munn, 528 So.2d 881 (Ala.Civ.App. 1988). We would note that the trial court would not have been bound by the testimony of Dr. Lyons, even if his testimony was uncontroverted. See DeHart v. Ideal Basic Industries, Inc., 527 So.2d 136
(Ala.Civ.App. 1988).
 "Further, the court heard testimony from the employment specialist that the employee's loss of earning capacity was as low as 6%. There was evidence presented concerning the employee's age, educational background, employment history, and mental acuity. Because the trial court was in this instance the finder of fact, we presume that it considered such evidence as was before it. See Orkin Exterminating Co. v. Williams, 389 So.2d 935
(Ala.Civ.App. 1980).
 "Finally, the credibility of the employee's testimony regarding her pain and inability to work was placed into question by the testimony of the private investigator, *Page 101 by the evidence presented on the surveillance video, and by statements the employee had made on her Social Security application. The trial court is in the best position to observe the demeanor of the employee and other witnesses. Dees v. Daleville Florist, 408 So.2d 155 (Ala.Civ.App. 1981). In arriving at its judgment, the court may consider all evidence, including its own observations, and interpret it according to its own best judgment. International Paper Co. v. Rogers, 500 So.2d 1102
(Ala.Civ.App. 1986). On appeal, this court will not reweigh the evidence or make any determinations as to the sufficiency thereof. Cook, 528 So.2d 881."
610 So.2d at 412-13. (Emphasis added.)
The Court of Civil Appeals, in Williams, unquestionably relied on surveillance evidence and on the trial judge's observations when it affirmed the judgment of the trial court.
We have reviewed the evidence by the standard established for the review of workers' compensation claims, and we conclude that the judgment of the Court of Civil Appeals must be reversed. REVERSED AND REMANDED.
HOUSTON, COOK, and BUTTS, JJ., concur.
SHORES, and KENNEDY, JJ., dissent.
HORNSBY, C.J., and INGRAM, J., recused.
[1] Section 25-5-57(a)(4)b. provides: "At any time, the employer may petition the court that awarded or approved compensation for permanent total disability to alter, amend, or revise the award or approval of the compensation on the ground that as a result of physical or vocational rehabilitation, or otherwise, the disability from which the employee suffers is no longer a permanent total disability and, if the court is so satisfied after a hearing, it shall alter, amend, or revise the award accordingly."