On Application for Rehearing

YATES, Judge.
The opinion of December 3, 1999, is ■withdrawn, and the following is substituted therefor.
This is a workers’ compensation case.
Alabama Insurance Guaranty Association (“AIGA”) appeals from the trial court’s denial of its petition to alter, amend, or vacate a judgment. That petition was filed pursuant to § 25-5-57(a)(4)b., Ala.Code 1975, which provides:
“b. ... At any time, the employer may petition the court that awarded or approved compensation for permanent total disability to alter, amend, or revise the award or approval of the compensation on the ground that as a result of physical or vocational rehabilitation, or otherwise, the disability from which the employee suffers is no longer permanent total disability and, if the court is so satisfied after a hearing, it shall alter, amend, or revise the award accordingly.”
The burden of proof is on the employer filing a petition under § 25-5-57(a)(4)b. Mayfield Trucking Co. v. Napier, 724 So.2d 22 (Ala.Civ.App.1998), citing Cerrock Wire & Cable Co. v. Johnson, 533 So.2d 622 (Ala.Civ.App.1988). Under the Workers’ Compensation Act, the term “employer” includes an insurer (such as AIGA) entitled to the employer’s rights and remedies. § 25-5-1(4). After hearing the evidence, the trial court reapplies the test for permanent total disability in order to determine whether the earlier disability is no longer present. Mayfield. “Permanent total disability” is the inability to perform one’s trade and to find gainful employment. Mead Paper Co. v. Brizen-dine, 575 So.2d 571 (Ala.Civ.App.1990). “Total disability” does not mean entire physical disability or absolute helplessness. Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App.1988).
The sole issue on appeal is whether the trial court erred in finding that AIGA had not met its burden of proving that Crump was no longer permanently and totally disabled.
On March 24, 1988, the court entered a judgment in favor of Violet Crump on her workers’ compensation claim filed against her former employer, Carbon Hill Manufacturing Company. The court found that Crump was permanently and totally disabled as a result of an on-the-job injury and awarded compensation benefits.
At the time, Carbon Hill Manufacturing Company was insured by Midland Insurance Company. Midland later filed for bankruptcy protection. Pursuant to § 27-42-1, Ala.Code 1975, AIGA assumed the duties and responsibilities of Midland, and it has been paying Crump’s workers’ compensation benefits and medical expenses.
On December 3, 1996, AIGA petitioned to alter, amend, or vacate the 1988 judgment entered in favor of Crump. In its motion, AIGA alleged that the physical impairments that had rendered Crump disabled in 1988 had improved or had become less debilitating, to such an extent that she could work and be retrained for gainful employment.
Following a hearing at which witnesses testified and depositions and other evidence, including videotapes of Crump, were admitted, the trial court denied AIGA’s petition. At trial, Dr. Rex Harris testified by deposition on behalf of AIGA. He stated that Crump had been referred to him by AIGA for an independent medical examination and that he had examined *210 her one time. Dr. Harris testified that he had reviewed the medical records provided to him concerning Crump’s history. After his examination, Dr. Harris wrote that it was his impression that Crump had chronic pain related to her earlier injury and that there was nothing he could do for her, other than to recommend that she continue treatment with her doctor for pain. He also stated that, in his medical opinion, Crump was not permanently and totally disabled and that she could perform some type of sedentary work. Dr. Harris also stated that he subsequently had viewed videotapes of Crump taken by investigators for AIGA and that the tapes led him to believe that when he examined her she had “grossly exaggerated]” her injuries.[1]
The family of Mamie Woods, now deceased, had paid Crump to sit with Mamie. AIGA introduced evidence of certain checks made payable to Crump, drawn on Mamie’s bank account from March 1992 to February 6, 1994, totaling approximately $12,000 over that two-year period. Lucy Woods, Mamie’s daughter-in-law, testified by deposition that Crump’s duties were to see that Mamie ate and to assist her, if necessary, with dressing. Lucy stated that Crump was a companion to Mamie and did not clean or do household chores, because the family had hired someone else to clean the house.
Mrs. Mary Banks appeared at the hearing for AIGA. She stated that for a time she had paid Crump $35 every other week to clean her home. Banks stated that she had not been present while Crump worked and that she did not know how long it had taken Crump to complete the work.
Myrtice Carr, a vocational expert, also testified at the hearing on behalf of AIGA. Carr stated that she considered Crump to be mildly mentally handicapped. She said that Crump read at a third-grade level, spelled at a first-grade level, and could do arithmetic at a second-grade level. Carr stated that in her opinion Crump was employable and trainable, but that she was functionally illiterate. When Carr was asked what jobs would be available to Crump, she stated that Crump could work as a fast-food worker, a waitress, a cook, or a home attendant.
Jim Daniel, a private investigator, testified for AIGA at the hearing. Daniel stated that he was hired by AIGA and that he had taken photographs and videotapes of Crump. The videotapes were taken on eight days between January 6, 1994, and July 23, 1996. Those tapes and photographs showed Crump driving her car and filling it with gasoline, going shopping, and picking up pecans with a small child.
Crump introduced the deposition testimony of Dr. Daniel Scarbrough. He stated that he had treated Crump since 1993, at which time he saw her for evaluation of her work-related back injury. Crump was complaining of pain in her back, going down into her legs. Dr. Scarbrough stated that his records indicated that Crump had had two back surgeries in the late 1980s for her back pain resulting from the injury. He prescribed muscle relaxants, pain and anti-inflammatory medication, and he continued her on her antidepressant medication. After that visit, Dr. Scarbrough saw Crump on numerous occasions, until June 10, 1997. He stated that Crump *211 would have more pain on some visits than on others. He also stated that on some visits she would have a greater range of motion than on others. Dr. Scarbrough stated that, in addition to her back pain, Crump had a peptic ulcer and that she suffered from anxiety and depression, which he believed was contributed to by the limitations on her back. He also stated that she had arthritic-type pain in her back. Dr. Scarbrough stated, “I mean, people with back problems have good days and they have bad days.” He opined that Crump would not be able to work, because of her back pain, anxiety, and depression. Dr. Scarbrough disagreed with Dr. Rex Harris’s opinion that Crump was employable. The videotape surveillance of Crump did not change his opinion that Crump was both permanently and totally disabled. Dr. Scarbrough also stated that it would not be inconsistent with her complaints of pain for Crump to work as a sitter if she “sits there and maybe gives the patient some medication or gets up and fixes her a Coke or a bowl of soup.”
Crump testified at the hearing that she had been hired by the family of Mamie Woods to be Mamie’s sitter. She said that her job was to see that Mamie ate her food and took her medicine. She also stated that she was not asked to perform any heavy housework or cleaning. She stated that she had taken the job because at that time her husband was unemployed. Crump testified that since her back surgery she has suffered from memory loss. She stated that she also receives Social Security total-disability benefits. Crump stated that she is able to get out of bed and move around on some days, but that on other days the pain prevents her from doing anything.
Crump’s son also testified at the hearing that he sees his mother on a daily basis and that she has good days and bad days.
At the conclusion of the proceeding, the trial court entered an order, providing, in pertinent part:
“It is the finding of this Court after a consideration of all the evidence presented in this case, that [AIGA] has failed to meet its burden of proof, and that the previous Order of this Court rendered herein on March 24, 1988, should remain unchanged and [that AIGA’s petition] should be denied.
“[Crump] is a 57-year-old woman who has had back surgery twice, and who is considered mildly, mentally handicapped, and who reads at a third-grade level, spells at a first-grade level, and can do arithmetic at a second-grade level, and who suffers from a memory loss, and she testified she tried to learn how to read, but could not because of her memory loss, and who is a credible person who is still one hundred percent (100%) totally disabled from performing gainful employment, and her injuries permanently and totally incapacitate her from working and being retrained for gainful employment.”
AIGA argues that the trial court erred in finding that Crump remained totally and completely disabled; it bases this argument on the videotape surveillance, the testimony regarding Crump’s work for the Woods family, and Dr. Harris’s testimony.
“ ‘The supreme court has consistently determined that the applicable standard of review does not allow this court to reweigh the evidence presented to the trial court. Ex parte Alabama Ins. Guar. Ass’n, 667 So.2d 97 (Ala.1995); Ex parte Veasey, 637 So.2d 1348 (Ala.1993); Ex parte Ellenburg, 627 So.2d 398 (Ala.1993). The resolution of conflicting evidence is within the exclusive province of the trial court, and this court is forbidden to invade that province *212 upon review. Id. Instead, we must affirm the judgment of the trial court if it is supported by substantial evidence. Ex parte Trinity Industries, Inc., [680 So.2d 262 (Ala.1996) ]. Further, it is well established that the trial court is in the best position to observe the demean- or and credibility of the employee and other witnesses in a workers’ compensation case. Ex parte Alabama Ins. Guar. Ass’n, 667 So.2d at 101.”
Mayfield Trucking Co., 724 So.2d at 25.
We note that Dr. Harris examined Crump on only one occasion, whereas Dr. Scarbrough had seen Crump on numerous occasions. As for the videotapes, Crump is shown on eight separate days over a period of two years doing several activities. However, there is evidence from Dr. Scarbrough and from Crump indicating that she had “good days and bad days” with regard to her ability to function. Crump’s sitting with Mamie Woods was limited to feeding, medicating, and being a companion to Mamie. Also, Crump testified that the work was temporary while her husband was unemployed. Because the resolution of conflicting evidence is within the province of the trial court and because we are prevented from reweighing the evidence, we conclude that the record contains substantial evidence to support the determination of the trial court. Therefore, the judgment is affirmed.
OPINION OF DECEMBER 8, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED AND RULE 39(k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY, J., concurs specially.
THOMPSON, J., dissents.

. On application for rehearing, AIGA contends that we have incorrectly stated that Dr. Harris said he had determined Crump to be capable of some type of sedentary work. However, on pages 60-61 of the clerk’s record, Dr. Harris does, indeed, make this statement. As we have noted, Dr. Harris also said he subsequently viewed videotapes of Crump's activities and came to believe that she had exaggerated her injuries when he examined her and that she was not impaired.