YATES, Presiding Judge,
dissenting.
I believe the majority has impermissibly reweighed the evidence. Therefore, I must dissent from the reversal and remand.
It is well settled that the standard of review applicable in a workers’ compensation case does not allow this court to reweigh the evidence presented to the trial court. Ex parte Alabama Ins. Guar. Ass’n, 667 So.2d 97 (Ala.1995); Ex parte Veazey, 637 So.2d 1348 (Ala.1993); Ex parte Ellenburg, 627 So.2d 398 (Ala.1993). The resolution of conflicting evidence is with the exclusive province of the trial court, and this court is forbidden to invade that province upon review. Id. Rather, we must affirm the trial court’s judgment if the record contains substantial evidence to support it. Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). It is also well settled that the trial court is in the best position to observe the demeanor and credibility of the employee and the other witnesses in a workers’ compensation case. Ex parte Alabama Ins. Guar. Ass’n, supra.
I agree with the trial court’s conclusion that the plaintiff Jean Staggs presented substantial evidence to support her claim. The co-employee, Manual Smith, who was still employed by Corr Williams, Inc., at the time of trial and who Ms. Staggs called as an adverse witness, gave testimony at trial that conflicted with his deposition testimony. In his deposition, Smith had testified that there was only a five-minute period between the time that Staggs finished loading his truck and the time when he collapsed in the computer room. At the trial, Smith testified that it could have been a 10- to 15-minute period. John *819 Piper, also employed by Corr Williams, testified that, “after he thought about it,” he concluded Staggs had been in the computer room for around 10 minutes when he had his heart attack.
Dr. Duff Austin was the emergency-room physician at Florence Hospital, where Mr. Staggs was taken after he had collapsed. Dr. Austin was certified in advanced cardiac life support and advanced trauma life support. He testified in his deposition that, for all practical purposes, Staggs was dead when he arrived at the hospital. He listed the cause of death as cardiac arrest. He testified that vigorous activity can precipitate or initiate cardiac arrest. He further indicated that if Staggs had been involved in vigorous activity immediately before the cardiac arrest, then it could be assumed that the vigorous activity was a contributing factor.
Corr Williams presented the testimony of Dr. Bradley Cavender, a cardiologist. Dr. Cavender based his testimony solely on a review of the records in this case. Medical records from 1990 and 1991 showed that Mr. Staggs had had an EKG in 1991 and that the doctor performing the EKG had interpreted the study as normal. Mr. Staggs also had had a treadmill test at that time, and that test was interpreted as “indeterminate, but no firm signs of ische-mia.” Dr. Cavender expressed the opinion that Mr. Staggs had been suffering from myocardial ischemia and hypertension and overinflated lungs consistent with advanced obstructive pulmonary disease.
In 1998, Mr. Staggs went to a MedPlus clinic; the records of that clinic indicated that he complained that his chest hurt, that he was congested and was wheezing, and that he had been sick for three weeks. According to the MedPlus records, his blood pressure was in the high normal range. The doctor at MedPlus prescribed Aleve, an anti-inflammatory medication, and Pepcid, a medicine to reduce the amount of acid in the stomach. The 1998 records contain a diagnosis of costochon-dritis, an inflammation between the ribs and the sternum. Dr. Cavender testified that without an autopsy he could not determine the cause of death, but that in his opinion, based on the records, there was “overwhelming odds” that heart disease caused Mr. Staggs’s death. However, Dr. Cavender testified on cross-examination that vigorous activity occurring immediately before cardiac arrest can be considered a factor precipitating, initiating, or contributing to the cardiac arrest.
In summary, the court heard evidence tending to show that just before he collapsed William Staggs had spent about 35 minutes carrying 100 to 120 boxes from the warehouse to his truck. Expert testimony from Dr. Austin indicated that vigorous activity immediately before cardiac arrest can be considered a precipitating or initiating factor. Mr. Staggs’s co-employee, who was still employed by Corr Williams at the time of trial, gave testimony that conflicted with his deposition testimony. Also, testimony from Corr Williams’s expert, Dr. Cavender, was not based on his having treated Mr. Staggs. Instead, Dr. Cavender reviewed records from 1990 and 1991, none of which contained a diagnosis of myocardial ischemia. The 1998 records contain a diagnosis of costochondritis, an inflammation between the ribs and the sternum. Even if Mr. Staggs had heart disease, the court heard evidence indicating that the vigorous activity contributed to his death. Further, Dr. Cavender testified that he could not determine the exact cause of death without an autopsy. He also testified that, based on Mr. Staggs’s past medical records, he believed that Mr. Staggs’s condition on the day he died warranted hospitalization rather than work.
*820 I believe the plaintiff Jean Staggs presented substantial evidence linking her husband’s death to the cardiovascular stress to which he was exposed in loading his truck on the morning of his death. Therefore, I dissent.