This Court granted Neale Rhea's petition for certiorari review of a judgment of the Court of Civil Appeals, which reversed the trial court's award of permanent partial disability benefits pursuant to the Alabama Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq. Broadly stated, the dispositive issue is whether the Court of Civil Appeals, contrary to the well-established rule set forth in this Court's decisions, independently weighed the evidence that was before the trial court. We hold that it did, and we reverse and remand.
Rhea's petition, which he copiously supplemented with facts pursuant to Ala.R.App.P. 39(k), reveals that this dispute arises out of two automobile accidents in which he was involved while working in the line and scope of his employment as a salesman for the respondent, Diamant Boart American Wheel Trueing Tool Company ("Diamant"). The first accident occurred in 1981; the second, in 1987.
In the first accident, Rhea was thrown into the steering wheel, where he incurred injuries to his head, knees, and chest. A few days later, he began to experience spontaneous "muscular contractions," that is, a facial "tic," on the right side of his face. Between 1981 and 1987, Rhea consulted a number of physicians for the facial contractions, as well as for pain in his neck and lower back. However, he neither sought, nor received, workers' compensation benefits or payment of his medical expenses.
The second automobile accident occurred on July 16, 1987. Once again, Rhea was thrown into the steering wheel and received injuries to his head, knees, and *Page 543 
chest. On July 14, 1989, Rhea sued Diamant, seeking workers' compensation benefits based on the 1987 accident, and alleging that the accident had rendered him totally and permanently disabled. The basis for his disability claim was primarily the spontaneous facial spasms. He asserted that the injuries he received in the second accident "accelerated," orexacerbated, the spasm, to such an extent that he was unable to perform his duties as a salesman.
On the basis of evidence presented ore tenus, the trial court found that Rhea received as the result of the 1987 accident a "permanent partial disability resulting in a 27% loss of earning capacity." Diamant appealed. The Court of Civil Appeals reversed, stating: "The record contains no evidence indicating that the hemifacial spasms following the 1987 injury were worse or were aggravated." Diamant Boart American WheelTrueing Tool Co. v. Rhea, 807 So.2d 537, 539 (Ala.Civ.App. 1999). Finding, in other words, that all of Rhea's impairment resulted from the1981 accident, it held that Rhea's claim was barred by the two-year statute of limitations applicable to workers' compensation claims in Ala. Code 1975, § 25-5-80. Rhea then petitioned this Court for a writ of certiorari. We granted his petition.
Although his petition alleges two grounds for review, one ground is dispositive, namely, that the Court of Civil Appeals erroneously "substituted its [view of the evidence] for that of the trial court."Petition, at 6. In that connection, it is well established that "[t]he Court of Civil Appeals is authorized to determine whether the trial court's decision is supported by sufficient evidence, but it is not authorized to independently weigh the evidence." Ex parte Golden PoultryCo., 772 So.2d 1175, 1177 (Ala. 2000).
Because the injury occurred before the 1992 amendments to the Workers' Compensation Act, we review this case according to the following additional rules:
 "The standard of appellate review in [workers'] compensation cases is a two-step process. Initially, the reviewing court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment."
Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93 (Ala. 1991). Otherwise stated, the issue is whether there was any legal evidence upon which the trial court could reasonably have concluded that Rhea suffered a permanent partial disability as a result of the 1987 accident.
In setting forth its findings of fact, the trial court stated:
 "[Rhea] testified that prior to his automobile accident of January of 1981, he had never experienced the facial spasm which began within several days following that accident. He testified that he had discussed the facial spasm with his regular physician, Dr. Bill Edge, but that the only treatment he received was chiropractic care. One of the chiropractors who treated the Plaintiff referred him to a neurologist, Dr. Craddock, who did not [prescribe] any treatment. [Rhea] testified in effect that the `tic' was more annoying than disabling. He testified, however, that following his second automobile accident in July 1987, that the spasms greatly increased and rather than being intermittent, the spasm was constant. He testified that the spasms were substantially the same on the day of the trial as they were immediately following the accident. From the court's observation, there is a *Page 544 significant contraction of the Plaintiff's face. Plaintiff testified that although he was able to perform all the duties of his employment and continued to handle all of his vocational obligations following the 1987 automobile accident, he was self-conscious about his appearance, especially in dealing with the new customers and distributors who did [not] know him prior to the second automobile accident.
 "Although testimony of the various physicians differ as to the etiology of the facial spasms, it is undisputed from a historical standpoint that the initial onset coincided with the first accident and the mechanics of the injury of the first accident were substantially the same as the mechanics of the injury in the second automobile accident, and the exacerbation was coincidental with the second accident. These facts, together with the opinions of two neurological specialists, Dr. Staner and Dr. Jankovic, that the spasms could have [been] caused by this type of accident, leads the court to the conclusion that the hemifacial spasms suffered by the Plaintiff [are] the result of an accident arising out of and in the course of his employment."
(Emphasis added.)
These findings were based, in part, on the following testimony:
 "Q. [By Rhea's counsel] If you would, describe to the judge — I'm trying to get a difference between this hemifacial spasm before 1987 and after 1987, and I'm talking about the . . . accident of 1987.
 "A. [By Rhea] Yes, sir. Well, my face started out, Your Honor, it just started out like a little tic and it didn't go away. And it did some pulling and it pulled down in my chest here. And it would run all — I could feel it all the way down in there. But it was not an everyday thing. It would be — there was no — seemed to be no plan or frequency to it, pattern to it, I guess you would say. Then after the 1987 [accident], then it became more constant daily, a twenty-four hour thing. . . .
". . . .
 "A. And I would chew my mouth up and stuff like that, which I have got a place in my mouth now that it happened during my sleep this week. But it's accelerated and this is the shape it's in now.
". . . .
"Q. How did that affect your ability to work?
 "A. Well, it affected me in areas when I got into tight situations, you know, about possibly something happening to your hand, getting a cut with a piece of diamond wire if you were diamond-wire sawing or sticking them in the wrong place on a concrete saw or a core drill. I mean, there's always that possibility when the eye started doing that. And, of course, as well as driving. I mean, changing lanes was the biggest thing. I mean, you usually just would have to get in the right lane and stay there because it would clog up and then you could only see out of your left eye. And it seemed like the left eye tried to compensate for the right."
(Reporter's Transcript, at 28, 139-40.)
The trial judge also heard the expert testimony of Dr. Mary Kessler, a "vocational rehabilitation specialist," who stated as follows:
 "Q. [By counsel for Rhea] In your judgment, would you think that the facial spasms would have an adverse *Page 545 
effect on the type of work he was doing . . .?
 "A. [By Kessler] Yes. It's very difficult for someone who is experiencing the facial spasms that they cannot control to deal with the public, especially to deal with the public that they may not be familiar with. It would be much easier for him to — if he knew the companies that he dealt with, and he dealt with many of the same people before, it would be easier for him to deal with that than it would for him to deal with new people that he had not met before and to be effective in selling the product. With the facial spasms, I believe it would affect it. And I also believe it would affect his obtaining work in that area if he should lose his job that he had at that time. . . ."
(Reporter's Transcript, at 79-80.) In short, the record contains legal evidence upon which the trial court could reasonably have concluded that Rhea suffered a partial permanent disability as a result of the 1987 accident.
"The measure of [workers'] compensation for permanent partial disability is loss of earning capacity." City of Gadsden v. Johnson,706 So.2d 1268, 1270 (Ala.Civ.App. 1997). Significantly, Rhea never alleged a loss of earning capacity as a result of the 1981 accident. Instead, he sought — and the trial court awarded — permanent partial disability arising out of the 1987 accident. The trial court expressly found "that although the initial accidental injury predisposed toward the second injury, there was no impaired loss of earning capacity until the second accident and that the loss of earning capacity did notoccur until that incident." (Emphasis added.) Thus, the trial court found Rhea had incurred none of his loss of earning capacity in the 1981 accident. The Court of Civil Appeals, however, "found" that Rhea had incurred all of his impairment in the 1981 accident. In doing so, it necessarily reweighed the evidence that was before the trial court and violated the principle expressed in Ex parte Golden Poultry Co., supra, and in cases similarly holding. See Ex parte Alabama Ins. Guar. Ass'n,667 So.2d 97 (Ala. 1995); Williams v. Lee Apparel Co., 610 So.2d 410
(Ala.Civ.App. 1992).
Because the trial court found that Rhea's permanent partial impairment arose out of the accident that occurred on July 16, 1987, and his complaint was filed on July 14, 1989, his claim for benefits arising out of the 1987 accident was not barred by the statute of limitations. The Court of Civil Appeals erred in holding that it was. The judgment is, to that extent,[1] reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
[1] The issue discussed in this opinion is not the only aspect of the judgment of the Court of Civil Appeals. It is, however, the only aspect that is properly before this Court for certiorari review. Our holding is, therefore, strictly limited to that portion of the judgment holding that § 25-5-80 barred the award of permanent partial disability benefits arising out of the 1987 accident. *Page 546