This is a workmen's compensation case.
After ore tenus proceedings, the trial court determined that Kim Cox suffered a compensable occupational disease while employed by W.Y. Shugart Sons, Inc. (Shugart). The trial court also held that the extent of the disease was permanent and total, leaving Cox with a complete loss of ability to earn. Compensation was awarded accordingly.
The issues raised by Shugart on appeal are: (1) Did the trial court err in determining that Cox suffered a compensable occupational disease? (2) Did the trial court err in determining that Cox was totally disabled? and (3) Did the trial court err in holding that the value of the insurance benefits should be considered in determining the amount of benefits awarded?
The record reveals that beginning in August 1985, Cox performed routine production labor in Shugart's factory as a sock seamer. Her job required rapid, repetitive hand movement. She claimed that early on she experienced "aggravating" pain and swelling in her left hand, which she did not report to Shugart until sometime in January 1986. She continued to work until May 1986, when she obtained medical attention for the problem for the first time. Her condition was diagnosed as tenosynovitis and required surgery and other treatment. Shugart paid temporary total benefits based on Cox's average weekly wage for 87 weeks. In June 1988, Cox initiated this action, seeking permanent total disability benefits due to an injury arising out of and in the course of her employment with Shugart. She later amended her complaint to add a count for an occupational disease. Shugart's motion for summary judgment on the injury claim was granted and Cox cross-appeals from the summary judgment, in the event Shugart is successful on the occupational disease issue.
At the outset, we note that our review of a workmen's compensation case is limited to determining whether there is any legal evidence to support the trial court's findings of fact. If any reasonable view of the evidence will support the court's findings, this court must determine if the correct legal conclusions have been drawn therefrom. Ex partePatterson, 561 So.2d 236 (Ala. 1990).
 I.
Shugart contends that Cox does not suffer from an occupational disease within the statutory meaning of the term and, therefore, was not entitled to compensation for such. Shugart does not deny that Cox has an impairment or disability which might limit her capacity for gainful employment. It is Shugart's position that Cox's condition is not a disease, but merely an inflammation *Page 1334 
of the tendons in the hand, which could occur to anyone in general, regardless of employment status, and that it is not peculiar to Cox's employment with Shugart. Shugart points out that there was expert medical testimony that Cox's disability is not actually a disease but is considered a condition of continuing irritation or inflammation resulting from repetitive hand actions.
Section 25-5-110(1), Code 1975, provides the definition of an occupational disease. We have determined that to qualify, the disease must be due to hazards which are in excess of those ordinarily incident to employment in general and which are peculiar to the occupation in which the employee is engaged.Taylor v. United States Steel Corp., 456 So.2d 831
(Ala.Civ.App. 1984).
The trial court made extensive findings of fact and conclusions of law in its thorough order determining that Cox suffered from an occupational disease and that, as a result, Cox suffers "permanent physical impairment to the whole body and permanent loss of earning capacity."
In arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observations, in determining the extent of loss. Cook v. Munn,528 So.2d 881 (Ala.Civ.App. 1988). We do not weigh the evidence.Cook. It is well settled that expert opinions in workmen's compensation cases are not binding on the trial court, even if the testimony is uncontroverted. Gibson v.Southern Stone Co., 518 So.2d 730 (Ala.Civ.App. 1987). However, the findings of the trial court on conflicting testimony are conclusive where there is testimony supportive of those conclusions. Suit v. Hudson Metals, Inc.,414 So.2d 115 (Ala.Civ.App. 1982).
Our review of the record reveals that a sock seamer's job requires repetitive hand movements, pulling socks on tubes as they pass on a conveyor belt. Cox's rate of pay was based on production level, inducing her to rapidly repeat the movements peculiar to her job. There was conflicting expert medical testimony regarding the extent of Cox's condition. However, there was no conflict in the testimony regarding the existence of tenosynovitis in Cox's left wrist. Also, the nature of her employment with Shugart probably caused the condition, and certainly aggravated it, due to the peculiar repetitive movements required of her hands in her job with Shugart as a sock seamer. One physician, Dr. Cecil Nepomuceno, specifically testified that he considered tenosynovitis as an "occupational hazard" of Cox's job, which required repeated movement of the wrist or the fingers. Much of this evidence clearly supports the trial court's finding that Cox suffered a compensable occupational disease within the statutory meaning of the term.
 II.
Shugart next contends that the trial court erred in determining that Cox was totally disabled. Shugart refers to testimony in the record from vocational experts that Cox would be considered totally disabled only if the disability associated with Cox's headaches was considered along with the tenosynovitis. Shugart argues that the headaches are independent of the tenosynovitis and that Cox is able to perform certain one-handed jobs within Shugart as well as for other employers. It is Shugart's position that Cox failed to present any medical evidence that her headaches are causally connected to her wrist condition and therefore, that the headaches should not be considered in calculating her percentage of disability.
The test for medical causation must be determined on a case-by-case basis, and our supreme court has held that testimony by medical doctors is not a pre-requisite to a finding of a compensable disability in every case. Ex partePrice, 555 So.2d 1060 (Ala. 1989). The trial court, as the fact-finder, is authorized to draw any reasonable inference from the evidence, and looks to the totality of evidence, including both lay and expert testimony. Price.
Appellate review requires that we look to the totality of the circumstances in an effort to support the trial court's conclusions. Price. *Page 1335 
It is well established that permanent total disability is the inability to perform one's trade or to obtain reasonably gainful employment and does not mean absolute helplessness.Genpak Corp. v. Gibson, 534 So.2d 312
(Ala.Civ.App. 1988). It is the duty of the trial court to determine the extent of the disability. Genpak.
In the instant case, the trial court observed the demeanor of the witnesses, including Cox. There was medical testimony that Cox's physical impairment was less than 100%, but that it might be enough to totally disable her from performing the type of job she had been doing for Shugart. There was evidence that, because of the pain in the hand, Cox is often severely limited in performing menial household tasks, and is even more limited in obtaining gainful employment. There was testimony that psychological testing supported Cox's truthfulness regarding her description of the pain she is experiencing as a result of the tenosynovitis. Additionally, there was evidence that the pain and headaches were chronic, requiring some type of pain management indefinitely. A reasonable view of the evidence supports the conclusion reached by the trial court that Cox became totally and permanently disabled as a result of her employment with Shugart, and we will not disturb that conclusion.
 III.
Shugart's final issue concerns the calculation of the award to Cox. Shugart contends that the trial court erred in allowing Cox to recover the value of the insurance benefits she had not lost. Shugart argues that Cox continued to receive weekly insurance benefits from Shugart until she chose to terminate them, and, therefore, that the award to compensate for underpayment was in error. In her brief, Cox concedes that she is not entitled to $637.71, which was ordered as compensation for underpayment of temporary total disability benefits based on insurance benefits that she had already received. Shugart's reply is that this underpayment is based on an additional $7.33 weekly for past insurance benefits Cox had already received and for future insurance benefits that Cox chose to terminate. We understand Shugart's position to be that in addition to the error in the calculation of the underpayment, Cox's weekly benefits for future benefits should be calculated at the rate of $148.02. (That is, $155.35 utilized by the trial court, less $7.33 insurance benefits = $148.02.)
Our review of the record reveals that Shugart was paying 75% and Cox was paying 25% of the insurance premiums during Cox's employment by Shugart. Cox's contribution was by payroll deduction. When Cox left employment, she was offered an opportunity to continue the insurance by paying the entire premium herself without benefit of the group rate she was receiving by virtue of her employment. She chose not to pay the premium.
The law regarding wage allowances for compensation purposes is found in § 25-5-57(b), Code 1975, which states in pertinent part:
 "Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his earnings."
Therefore, what constitutes earnings consists of three elements: (1) allowances of any character; (2) made to an employee in lieu of wages; and (3) specified as part of the wage contract. Ex parte Murray, 490 So.2d 1238
(Ala. 1986).
In Murray, our supreme court held that employer-paid fringe benefits, which were not provided gratuitously, but were specified as part of the wage contract, were included as "allowances of any character" in determining the employee's average wage. The rationale there was that if the computation is to determine what has been lost, then the fringe benefits must be included. The supreme court determined that there is a discernible economic value to the worker in having someone else pay the insurance premiums because, if the worker were forced to purchase the same insurance out of take-home pay, the reduction of disposable income affects the employee's standard of living. *Page 1336 
In view of the holding in Murray, we must affirm the determination of the amount utilized by the trial court to calculate Cox's future compensation benefits. However, the award ordered by the trial court to compensate for the underpayment, as admitted by Cox, was in error. To hold otherwise, would allow Cox to recover twice.
We affirm the trial court's judgment regarding the issues of permanent total disability due to a compensable occupational disease. The issue regarding the amount of compensation is due to be affirmed in regard to the amount utilized for future compensation calculations.
As conceded, the order concerning the $637.71 was in error, and the judgment is due to be reduced accordingly. This case is reversed as to that issue and remanded for entry of a judgment consistent with this opinion.
In view of the foregoing, we pretermit a discussion of the issue raised by Cox on cross-appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
INGRAM, P.J., and RUSSELL, J., concur.