664 So.2d 214 (1994)
Shirley D. KING
v.
VERMONT AMERICAN CORPORATION.
AV92000731.
Court of Civil Appeals of Alabama.
September 16, 1994.
Rehearing Denied October 21, 1994.
Certiorari Quashed June 23, 1995.
*215 James R. Bowles of Bowles & Cottle, Tallahassee, for appellant.
Michael M. Eley and Bart Harmon of Webb & Eley, P.C., Montgomery, for appellee.
Alabama Supreme Court 1940154.
THIGPEN, Judge.
Shirley D. King brought this action in October 1992, seeking to recover benefits from Vermont American Corporation (Vermont) pursuant to the Workmen's Compensation Act[1] of Alabama. King alleged, inter alia, that she had developed an occupational disease (carpal tunnel syndrome); that it was contracted from or was aggravated by the nature of her employment; and that her contraction and/or the aggravation of the disease arose out of and in the course of her employment with Vermont.[2] Following ore tenus proceedings, the trial court determined that King was not entitled to recover benefits; hence, this appeal.
The record reveals that King was employed by Vermont in 1984 and that she held several different jobs prior to her most recent position as an "inspector grinder" of small manufactured articles made in Vermont's foundry. She inspected the articles and then ground or cleaned them with an air gun. Prior to her employment with Vermont, King had worked at other various jobs, the most significant being 14 years as a sewing machine operator.
In September 1991, King sought treatment from a chiropractor for arm, neck, and back problems. King testified that she suspected she might have carpal tunnel syndrome, and she went to the chiropractor "because my arms and neck was hurting and then I mentioned my back while I was down there to him." When her back did not improve, the chiropractor referred her to Dr. Ryan, a neurosurgeon. Dr. Ryan performed certain tests and discovered a bulging disc in her back. King testified that she mentioned carpal tunnel syndrome to Dr. Ryan, but that he did not treat her for that. Dr. Ryan treated her on two occasions for her back problem and then referred her to Dr. Caudill Miller, a neurologist, for certain nerve conduction tests.
In January 1992, Dr. Miller diagnosed King as having mild carpal tunnel syndrome. He prescribed medication and wrist immobilizers *216 for King to wear at night. King testified that she refused Dr. Miller's recommendation that she have additional testing, because she could not afford the expenses not covered by her insurance. King requested that Dr. Miller release her to return to work. King testified that Vermont refused to allow her to return to work until she was seen by another physician, since she had not followed Dr. Miller's recommendation.
In March 1992, Vermont referred King to Dr. Stauffer, who reviewed her medical records and recommended that she not return to work as an inspector until she followed Dr. Miller's recommendation for further testing.
King testified at the hearing in April 1993 that she was still experiencing numbness in her hands, that her arms and neck still hurt, and that she lacked strength in her hands. When asked when she first suspected she might have contracted carpal tunnel syndrome, she stated:
"Well, all the time that I had been inspecting I knew that I was sore, my arms and hands and they would get numb. But I didn't have no idea that was what was wrong with me until I went to Dr. Miller."
She further stated that the symptoms first manifested themselves about six to eight months before she saw Dr. Miller; however, she admits that although she believes she complained to some fellow employees about her condition, she did not inform her employer of her contentions prior to filing the instant action. Additionally, she admitted that she applied for employee sickness and accident benefits, and that when she did so, she signed a statement indicating that her condition or illness did not arise out of her employment.
Various doctors testified by deposition. Each testified regarding the myriad of medical conditions that can cause or contribute to the development of carpal tunnel syndrome, such as diabetes, arthritis, obesity, and hormonal changes in women. None of the doctors concluded or opined that King's condition was caused or aggravated by her employment, even though they all agreed that it was current medical thought that repetitive motion can cause or contribute to the development of the condition. Dr. Stauffer concluded that inasmuch as King's condition had shown little improvement, it was his opinion that her symptoms were not related to her job at Vermont, since most patients with carpal tunnel syndrome improve when they cease the activity causing the problem. A vocational expert testified that King had sustained a 68% vocational disability as a result of her carpal tunnel syndrome.
The trial court concluded that King did not carry the burden of proof required in order to entitle her to recover workmen's compensation benefits on her claim that her carpal tunnel syndrome was contracted from or aggravated by her employment. The trial court noted that there was medical evidence of mild carpal tunnel syndrome; however, the trial court found that there was no evidence that her condition was related to her employment.
On appeal, King asserts that the trial court erred in holding that she failed to produce sufficient evidence that her carpal tunnel syndrome was related to her employment, or that her condition was aggravated by the conditions of her employment.
Both parties correctly note the oftquoted, two-pronged review process established in Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). First, we must determine if there is any legal evidence to support the trial court's findings, and, if so, whether any reasonable view of that evidence supports the judgment. Additionally, "[w]here one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993).
Ala.Code 1975, § 25-5-110(1), defined an occupational disease as one "which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged." See W.Y. Shugart & Son, Inc. v. Cox, 578 So.2d 1332 (Ala.Civ.App.1990). To recover workmen's compensation benefits for an occupational disease, the employee must prove that the disease arose out of and *217 in the course of employment. Ala.Code 1975, § 25-5-110. Furthermore, "[a]n occupational disease is not compensable if it is not caused or aggravated by the nature of the employment." Hall v. Teledyne Firth Sterling, 448 So.2d 395, 396 (Ala.Civ.App.1984). The trial court expressly found that King failed to prove that her condition was related to her employment.
King asserts that her condition was caused by repetitive hand motion required in her duties with Vermont. Although she was diagnosed as having mild carpal tunnel syndrome, there was no evidence regarding the specific cause of her condition other than her allegations. Medical testimony disclosed that numerous known causes of carpal tunnel syndrome exist other than repetitive hand motion, including diabetes, hormonal changes, arthritis, and obesity. Medical evidence disclosed that King has had a hysterectomy and is diagnosed as obese. Thus, based upon the evidence presented, King's condition may be attributable to her health history that is unrelated to her employment with Vermont. There is simply nothing in the record other than her own allegations relating King's condition to her employment, and there is ample evidence indicating that her condition was caused by something unrelated to her employment with Vermont. We are mindful that medical testimony is not always required to find medical causation. Ex parte Price, 555 So.2d 1060 (Ala.1989). At most, King's testimony that she suffered an occupational disease related to her employment conflicted with the other evidence presented. This court does not reweigh the evidence on appeal. Woody v. Russell Corp., 624 So.2d 628 (Ala.Civ.App.1993). Moreover, the findings of the trial court on conflicting testimony are conclusive where there is testimony to support them. Suit v. Hudson Metals, Inc., 414 So.2d 115 (Ala.Civ.App.1982). The record is replete with legal evidence to support the trial court's finding that King's condition was not related to her employment with Vermont. Likewise, there is no evidence that King's employment with Vermont caused or aggravated her condition. Although the record contains evidence that repetitive hand motion is one of the many known causes for carpal tunnel syndrome, there is simply nothing in the record showing that King's employment with Vermont contributed in any way to the cause of her carpal tunnel syndrome. See Ex parte Valdez, 636 So.2d 401 (Ala.1994). We are bound by the mandate of our Supreme Court that "where one reasonable view of the evidence supports the trial court's judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Veazey at 1349; see also Ala.Code 1975, § 12-3-16.
Accordingly, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., concurs in the result only.
YATES, J., dissents.
ROBERTSON, Presiding Judge, concurring in the result only.
I concur in the result only because of our Supreme Court's holding in Ex parte Veazey, 637 So.2d 1348 (Ala.1993). It is my opinion, however, that our Supreme Court in Ex parte Harris, 590 So.2d 285 (Ala.1991), has held that carpal tunnel syndrome is an "injury" and not an occupational disease.
YATES, Judge, dissenting.
I would reverse this case based on our Supreme Court's holding in Ex parte Cash, 624 So.2d 576 (Ala.1993); therefore, I respectfully dissent.
There was expert testimony that King suffered carpal tunnel syndrome and that no disease process was found to have caused her condition. Further, expert testimony also revealed that repetitive-type wrist action associated with employment does cause carpal tunnel syndrome. King's job as an assembly line worker for two and one-half years using an air gun to clean parts required constant repetitive movement of both her hands and wrists. The evidence supported King's claim that her injury was aggravated by her work. I believe that the trial court erred in failing *218 to award workmen's compensation benefits to King.
NOTES
[1] The review of this case is governed by Ala. Code 1975, § 25-5-1 et seq., the Workmen's Compensation Act, which was in effect before the amendments of May 19, 1992.
[2] We note that while the complaint categorized King's affliction as an "occupational disease," this court has not specifically stated whether carpal tunnel syndrome is an "injury" or an "occupational disease." Gold Kist, Inc. v. Casey, 495 So.2d 1129 (Ala.Civ.App.1986), and Clanton v. Hudson Foods, Inc., 594 So.2d 141 (Ala.Civ. App.1991), both imply that carpal tunnel syndrome is an injury. W.Y. Shugart & Son, Inc. v. Cox, 578 So.2d 1332 (Ala.Civ.App.1990), however, classified tenosynovitis, similar to carpal tunnel syndrome, as an occupational disease.

Apparently in recognition of the increasing number of claims regarding carpal tunnel and other cumulative trauma disorders, the legislature amended Ala.Code 1975, § 25-5-1(9), to statutorily define "injury" to include carpal tunnel syndrome. That amendment, effective May 19, 1992, is inapplicable to this action.